IN THE MATTER OF SCOTT DILLINGHAM,
REAL ESTATE BROKER'S LICENSE NO. 510.

(Filed 10 October 1962.)

1. **Brokers and Factors § 8; Administrative Law § 4—**

The statute regulating real estate brokers and salesmen provides that review of an order of the Board suspending or revoking a license shall be *de novo* in the Superior Court in all cases, regardless of whether the board has made a record of its proceedings, G.S. 93A-6(b), and therefore G.S. 143-307 does not apply.

2. **Brokers and Factors § 8—**

The North Carolina Real Estate Licensing Board has authority to revoke or suspend the license of a real estate broker or a real estate salesman solely for misconduct which is connected with the pursuit by the licensee of the business of broker or salesman, and evidence of a licensee's guilt of criminal offenses not related to the pursuit of his licensed privileges, even though they be of infamous, vile and depraved character, and evidence of his fraud or deceit in selling his own notes secured by deeds of trust, are irrelevant in determining whether his license should be revoked or suspended.

3. **Statutes § 5—**

A statute must be read contextually with reference to its subject matter and objectives to ascertain the legislative intent.

4. **Same—**

When a statute, in describing its application, enumerates specific classifications followed by words of general description, the general words will be limited to classifications of the same general nature or class as those particularly and specifically enumerated. This rule is especially applicable to penal and criminal statutes, which must be strictly construed.

APPEAL by the North Carolina Real Estate Licensing Board from *Huskins, J.,* Regular April-May 1962 Civil Term of BUNCOMBE.

On 5 July 1961 the North Carolina Real Estate Licensing Board, hereafter to be designated as The Board, pursuant to the provisions of G.S. 93A-6, upon its own motion, issued a written notice notifying Scott Dillingham, a licensed real estate broker, that probable grounds existed to revoke or suspend his real estate broker's license under the provisions of G.S. 93A-6, (a), (1), (2), (3), (8), and (10), as shown by judgments rendered in four cases against him — three civil and one criminal — which cases are set forth in the written notice with particularity, and further notifying him that the hearing would be held in Room 711, First-Citizens Bank and Trust Company Building, Raleigh, North Carolina, at 11:00 o'clock a.m. on 28 July 1961, where and when he could be present, offer evidence, and be heard in person or by counsel.

The written notice was sent to Scott Dillingham by registered mail, and he receipted for it on 7 July 1961.

On 21 July 1961 The Board received a written reply to its notice from Scott Dillingham.

The Board had the hearing at the place and time specified in the notice. Scott Dillingham did not appear either in person or by attorney. The Board made findings of fact in respect to the four cases specified in the notice, and that Scott Dillingham is guilty of violating the provisions of G.S. 93A-6, (a), (1), (2), (3), (7), (8), and (10). Whereupon, it ordered that the Real Estate Broker's License of Scott Dillingham be, and it hereby is, revoked, and that he surrender to The Board the original certificate of his license, and his certificate of renewal of his license. In apt time Scott Dillingham appealed to the superior court. Whereupon, The Board sent the record in the proceeding to the superior court of Buncombe County, the county of the residence of Scott Dillingham. G.S. 93A-6, (b).

In the superior court The Board and Scott Dillingham waived a jury trial. G.S. 1-184. Judge Huskins excluded all the evidence offered by The Board, and allowed Scott Dillingham's motion for judgment of compulsory nonsuit. The Board appeals to the Supreme Court.

*Lee & Allen, by H. Kenneth Lee for the appellant.*
*W. M. Styles for the appellee.*

PARKER, J.  The Board assigns as error that Judge Huskins heard the proceeding on appeal *de novo* rather than on the record. This assignment of error is overruled.

The General Assembly at its Regular Session in 1957 enacted Ch. 744, Session Laws 1957, now codified as G.S. Ch. 93A, Real Estate Brokers and Salesmen, which is "An act to define, regulate and license real estate brokers and real estate salesmen in North Carolina and to create the North Carolina Real Estate Licensing Board and define its powers and duties, and to provide penalties for the violation of the provisions of the act." The Board was created by this Act, and is operating by virtue of its provisions. G.S. 93A-6, (b), of this Act as codified specifically prescribes that when The Board suspends or revokes a license, the licensee shall have the right to appeal within a fixed time to the superior court, "where he shall be entitled to a trial *de novo*." *S. v. Warren,* 252 N.C. 690, 692, 114 S.E. 2d 660, 663.

The Board contends that it made and preserved a record of the proceeding, and, therefore, the review by the superior court shall be on the record as provided in G.S. 143-314 and 143-315. That only when The Board enters an order without making a record shall the pro-

ceeding be heard *de novo*. That there is no sound reason why this Board was not placed under the provisions of G.S. Ch. 143, Article 33, Judicial Review of Decisions of Certain Administrative Agencies, and that the advantages of uniformity will be lost if each new licensing board is left to operate under its own statute.

G.S. 143-307, Right to Judicial Review, enacted in 1953, provides: "Any person who is aggrieved by a final administrative decision, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of such decision under this article [Article 33], unless adequate procedure for judicial review is provided by some other statute, in which case the review shall be under such other statute."

Such an argument might have been convincing if it had been addressed to the General Assembly when it was considering the enactment of this statute. But, however that may be, the statute codified as 93A, Real Estate Brokers and Salesmen, states in G.S. 93A-6, (b), in clear and unmistakable language that on an appeal to the superior court from an adverse decision by The Board the accused licensee "shall be entitled to a trial *de novo*." The intent and meaning of the Legislature in using such words are manifest. It means a trial *de novo* without any qualification and in all such appeals. Adequate procedure for judicial review is provided by this statute. In this plain language the Legislature has spoken, and it is not for the Court to write into the statute that the accused licensee shall be entitled to a trial *de novo* only when The Board has entered an order and made no record, as contended by The Board.

The Board assigns as error the exclusion by the court, on defendant's objection, of the entire record in the superior court of Buncombe county of the case of *State ex rel. Robert S. Swain, solicitor of the 19th Judicial District v. Scott Dillingham, individually, et al.,* which was a suit instituted on 8 March 1959 to enjoin Scott Dillingham and one Hazel Rice from maintaining and operating in Buncombe County at that time a public nuisance, to-wit, a house of prostitution, and from keeping therein prostitutes for hire whose illegal earnings Scott Dillingham shared, and in which suit Scott Dillingham consented to the signing of a judgment against him *et al.* by a superior court judge padlocking the premises for one year on the grounds alleged in the complaint.

The Board also assigns as error the exclusion by the court, on defendant's objection, of a certified copy, which defendant admitted was a true and correct copy, of the Criminal Minute Docket of Buncombe County superior court of 14 April 1959 showing that Scott Dillingham on that day pleaded guilty to a charge of operating a disorderly house.

The conduct and criminal acts of Scott Dillingham in the year 1959, as disclosed by the above excluded records of the superior court of Buncombe County, are of an infamous, vile and depraved character. The basic question for decision presented by these assignments of error concerns the authority of The Board to revoke or suspend his license as a real estate broker for such conduct and criminal acts of which he is guilty, where that conduct and criminal acts are not connected with the pursuit in any way of his licensed privilege.

G.S. 93A-6, (a), authorizes The Board to hold a hearing and to revoke or suspend the license of a real estate broker or real estate salesman, heretofore issued by it under the provisions of Chapter 93A, Real Estate Brokers and Salesmen, General Statutes of North Carolina, if he is found guilty by it of "performing or attempting to perform *any of the acts mentioned herein*" (emphasis ours); then eleven acts are enumerated.

The Board made specific findings of fact, and concluded that Scott Dillingham was guilty of violating the provisions of G.S. 93A-6, (a), (1), (2), (3), (7), (8), and (10). The only one of these eleven acts specified in the statute which might be contended to have any bearing in respect to Scott Dillingham's guilt of maintaining and operating a house for the purpose of prostitution in violation of the criminal law of this State, G.S. 14-204, and of his guilt of operating a disorderly house in violation of the criminal law of this State, is eight, which reads: "(8) Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interests of the public."

The question here presented is one of first impression in this State. However, it has been passed upon by the Supreme Courts of Iowa and California; by the Kansas City Court of Appeals of Missouri, and by the Superior Court of New Jersey, Appellate Division.

The Iowa case is that of *Blakeley v. Miller, Real Estate Commissioner*, 232 Iowa 980, 7 N.W. 2d 11. In that case Blakeley was the holder of a real estate broker's license issued under authority of Chapter 91.2 of the 1939 Code of Iowa. He was appointed by a district court of Jefferson County, Iowa, as a referee in a partition action involving real estate, with an express order of court to sell the land, and to divide the proceeds between the several owners. He so conducted himself as to cause the court to discharge him as referee without compensation. Thereupon, Miller, the real estate commissioner, gave notice and had a complaint served upon Blakeley of a hearing in reference to said matter. Blakeley appeared with counsel and evidence was heard. The real estate commissioner found that Blakeley was

guilty of acts in connection with his duties as referee, which were in violation of the provisions of section 1905.45 of the Code of Iowa, and entered an order revoking his license as a real estate broker. Blakeley sought a review in the district court, claiming the commissioner acted illegally and without jurisdiction. The district court entered a decree annulling the order of the commissioner, and he appealed to the Supreme Court.

The Supreme Court quotes section 1905.45 of the Code of Iowa which authorized the commissioner to suspend or to revoke the license of any real estate broker or real estate salesman issued under the provisions of this chapter, "where the licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of: 1. Making any substantial misrepresentation, or * * * 8. Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interests of the public, or * * * 10. Any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes improper, fraudulent, or dishonest dealing." (It is to be noted that the above grounds for the suspension or revocation of a license are identical with ours.)

After quoting the statute the Supreme Court said:

> "The language of the above section, 'acts mentioned herein,' must mean the acts of a real estate salesman or real estate broker for which a license is required in section 1905.20. And in the performance of those duties the statute holds the salesman or broker to strict accountability under pain of revocation of his license, but nowhere in the statute do we find that his conduct, outside of his actions in connection with his duties while so acting as a salesman or broker, after the license has been once issued and six months have elapsed, applies to the revocation of his license. One could think of many good reasons why it would be better to have the actions outside of his conduct in acting as a real estate agent apply to his right to hold a real estate license, but this is for the legislature to say and not for the court to write into the statute.

> \*          \*          \*          \*          \*          \*          \*          \*

> "The acts complained of and upon which the real estate commissioner revoked the license were not connected in any way with the performance of appellee's duties as a salesman or real estate broker. The legislature of Iowa saw fit specifically to except one acting under order of court, and in the case at bar Blakeley was acting under order of court. In the construction of a statute such

as confronts us in this case, the sole duty of the court is to ascertain from the statute as written the intent and purpose of the legislature, which is the sole law-making body."

With all of the Justices concurring, the district court's judgment annulling the commissioner's order was affirmed.

The California case is that of *Schomig v. Keiser, Real Estate Commissioner, et al.*, 189 Cal. 596, 209 P. 550. In that case plaintiff Schomig filed a petition for a writ of *certiorari* against Keiser, Real Estate Commissioner, to review the latter's order revoking petitioner's license as a real estate broker or real estate salesman under section 12 of the Act establishing a real estate commissioner and authorizing him to revoke licenses for certain causes. The Supreme Court issued the writ. The petition shows that Edward Rautenberg filed a verified complaint with the real estate commissioner against Schomig, showing that he was Rautenberg's agent in the collection of payments on a contract for the sale of real estate in Oakland; that the contract was made by Rautenberg with certain Negroes for the purchase of the land, and subsequently they sold the lots to Miss Wall who is making the payments to Rautenberg by means of the agency of Schomig through the Oakland Bank of Savings at the rate of $15.00 per month; that the bank was to transmit said money through Schomig to Rautenberg; that Rautenberg had received from Schomig all that had been received by him from Miss Wall excepting the sum of $114.00, which had been paid by Miss Wall in excess of the amount due; that Rautenberg then complained to the bank, and the bank then forced Schomig to account to him, and confess that he had received the sum of $114.00.

The Supreme Court of California quoted a portion of section 12 of the Act authorizing him to revoke the license of a real estate salesman or broker "at any time where the holder thereof in performing, or attempting to perform, any of the acts mentioned in section 2 hereof is guilty of * * * (5) Any other conduct, whether of the same or a different character than hereinabove specified, which constitutes dishonest dealing," a provision almost identical with section 93A-6, (a), (10) of our Act. The Supreme Court also quoted section 2 of their Act defining a real estate broker and a real estate salesman, which is almost identical with section 93A-2, (a), and (b), of our Act. After doing so, the Court said:

"It will be seen that this does not authorize the commissioner to revoke any license of either a broker or salesman under the act, unless he is acting for a compensation, and also unless he does the acts complained of at a time when he is negotiating for

the sale or purchase of real estate, or is selling or buying the same or negotiating a loan thereon or offers to lease, or rent, or places for rent, or is collecting rents, from real estate, as a whole or partial vocation.

"Any employment by any person or another to collect payment on an agreement which has already been negotiated and is in all respects perfected and the terms agreed upon, does not make the party a real estate broker or real estate salesman, and any misconduct in performing such acts would not warrant the real estate commissioner in revoking the license of such person.

"The portion of the act which authorizes the real estate commissioner to forfeit the license of a broker or salesman and take it away from him is highly penal in its nature, and should not be construed to include anything which is not embraced within its terms."

The opinion written by *Chief Justice Shaw* and concurred in by other Justices annulled the order of the real estate commissioner.

The Missouri case is that of *Robinson v. Missouri Real Estate Commission, Mo. App.*, 280 S.W. 2d 138, 56 A.L.R. 2d 566 (6 June 1955). This was an appeal from the judgment of a circuit court affirming the order and decision of the Real Estate Commission revoking the license of Don Robinson as a real estate broker. At the hearing the Commission found these facts: One McCown owned a house in Kansas City, having purchased it through appellant Robinson. Early in 1953, McCown, through another broker, sold this property, and took back from the purchaser two promissory notes secured by a deed of trust, one note for $3,310.62, the other for $1,000.00. McCown carried the notes and deed of trust to appellant, and asked him if he could sell them. Robinson said, "he would try to find a buyer." This occurred about 15 August 1953. Appellant sold the notes to one John and received in payment a certified check in the amout of $2,586.37, made jointly payable to Herbert and Juanita McCown and Don Mar Realty Company. On 31 August 1953, appellant told McCown that he could get $1,850.00 for the notes, and the McCowns, relying upon his statement, signed the paper authorizing the sale of the notes for that amount. The notes had been sold to John before the instrument authorizing their sale for $1,850.00 was signed. McCown was paid $1,850.00. Neither McCown nor his wife ever saw, or knew of, the check for $2,586.37 made by John payable to them and appellant jointly. Nor did either give authority to anyone to endorse their names thereon. The check was handed to one Turner, a salesman employed by the appellant. Appellant told Turner to endorse the names of McCown and

his wife on the check. Turner did so and returned the check to appellant. The Commission announced its finding on 30 June 1954, and concluded that the misrepresentation made by appellant to the McCowns as to the amount received in the sale of the two notes constitutes a substantial misrepresentation in the conduct of respondent's business in violation of section 339.100 (1), RS Mo. 1949, [VAMS], and constitutes untrustworthy, improper, fraudulent, dishonest dealings and conduct in violation of section 339.100 (7), RS Mo. 1949, [VAMS]. The Commission further concluded that the aforementioned forgery constitutes untrustworthy, improper, fraudulent, dishonest dealings and conduct within the meaning of and in violation of section 339.100 (7), RS Mo. 1949, [VAMS].

The Kansas City Court of Appeals quotes section 3 of the Missouri Real Estate Commission Act, which defines who is a real estate broker, and states the Commission is authorized to revoke a broker's license if he is found guilty of any of the eleven acts set out in section 10, Laws of 1941, pp. 428-429. It then stated, the undisputable fact is that McCown engaged appellant *to sell notes*, and that this employment had nothing to do with the sale or exchange of real estate, or with the leasing or renting of real estate, or with the loaning of money for others to be secured by a deed of trust or mortgage on real property. That reprehensible as appellant's conduct was, it was unconnected with his activities and duties as a real estate broker. The Court then stated the facts, and quoted extensively from the Iowa and California cases set forth above.

After this the Court said:

"We are convinced that the California and Iowa courts have correctly construed these Real Estate Broker Acts. Extensive search reveals no decision to the contrary.

"It is a generally accepted doctrine that, where a statute authorizes the revocation of a license for causes enumerated, such license cannot be revoked upon any ground other than one of the causes specified. 33 Am. Jur. p. 382; 53 CJS, Licenses, § 44, p. 651.

"And it is also a familiar rule of statutory construction that 'where a law specifically designates several matters or things which shall be governed by its provisions, and then by general language undertakes to include other acts and things not specifically named, it must be so construed as to apply only to things or acts of the same general nature as those definitely set out.' *State ex rel. Spriggs v. Robinson*, 253 Mo. 271, 287, 161 S.W. 1169, 1170, and *State ex inf. McKittrick v. Wilson*, 350 Mo. 486, 166 S.W. 2d 499, 501, 143 A.L.R. 1465.

"Ten of the eleven grounds set out in Sect. 10 of the Act authorizing revocation of a license relate to the conduct of the real estate business. The general language, 'any other conduct which constitutes untrustworthy . . . dealings, or demonstrates bad faith or gross incompetence', appearing in clause (7) must be construed as applying to that business — not to some outside activity of a broker.

"Let us assume that appellant also had a license to sell intoxicating liquor, and that he kept his establishment open on Sundays, sold liquor to minors and, in general, ran a disorderly place. Could it be said that respondent Board would have been justified in revoking his real estate broker's license because he had violated the liquor laws? We think not, for the simple reason that those unlawful acts had nothing to do with the *sale, exchange, rental or negotiation of loans on real estate.* And the same is true of the acts on account of which the Board undertook to revoke appellant's broker's license.

"In our opinion, the following tends to support our present holding. Some of the States having real estate broker's license laws also require a broker to give bond that he will conduct himself in accordance with the provisions of the Acts. In several reported cases the broker and his surety had been sued because of admittedly gross fraud on the part of the broker. Those cases hold that the surety is not liable unless the broker's fraudulent acts arise out of some transaction falling within the statutory definition of the broker's business. In other words, the broker's trickery must occur in connection with the *sale, rental or negotiation of loans on real estate.* [Quoting extensive authority]

"The judgment of the Circuit Court is reversed, and the cause is remanded with directions to the Circuit Court to enter a new judgment reversing the finding and judgment of the Commission."

These three decisions show that the Supreme Courts of the State of Iowa and of the State of California, and a Kansas City Court of Appeals of the State of Missouri have construed the statutes of their respective States to confine the delegated authority of the licensing commissioner or commission to suspend or revoke the license exclusively to activities in which the licensee has actually engaged as a real estate broker.

The New Jersey case is that of *Division of New Jersey Real Estate Commission v. Ponsi,* 39 N.J. Super. 526, 121 A. 2d 555 (15 March 1956). In this case there was ample evidence that the appellant Ponsi, a licensed real estate broker, deliberately engaged in unfair and

unworthy dealing in the course of a real estate transaction concerning his own property. After a hearing the Real Estate Commission resolved that Ponsi had been guilty of conduct which demonstrates bad faith or unworthiness, under the New Jersey statute, and for that cause denied him a renewal of his real estate broker's license. N.J.R.S. 45:15-17 authorizes the commission to suspend or revoke a real estate broker's license "where the licensee, in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of"; and then follows an enumeration of seventeen acts. The New Jersey Court, after referring to the Iowa, California, and Missouri cases set forth above, and after setting forth that their statute obliges an applicant for a license to furnish to the commission "evidence of good moral character," and that it seems inconceivable that the Legislature intended to establish one standard for the issuance of a license and another for its renewal or revocation; and that the statute provides the commission may "in its discretion" refuse to grant any new license "upon sufficient cause being shown"; and that no license shall be issued to any person who has been convicted of certain specified criminal offenses, said:

> "Those provisions display the broad legislative object and purpose to limit the licensees to reputable, honorable and conscientious persons.
> "It is therefore in recognition of the indubitable intent of the Legislature that a significant meaning be ascribed to the specifications of Section 45:15-17, such as (e) *'Any* conduct which demonstrates unworthiness* * *bad faith* * *'*; (h) 'Being convicted of a *crime* * *'*; and (1) *'Any* other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing.' (Italics supplied.)
>
> \*       \*       \*       \*       \*       \*       \*       \*
>
> "We therefore express the opinion that acts of a licensed broker comprehended by the statute in its specifications which are determined by the Commission to disqualify the real estate broker from the retention or renewal of his license are not necessarily restricted to those committed in the pursuit of the privileges accorded by the license."

The determination of the commission was affirmed. This case is cited with approval in *Maple Hill Farms, Inc. v. Division of New Jersey Real Estate Commission*, 67 N.J. Super. 223, 170 A. 2d 461 (25 April 1961).

Our statute, G.S. 93A-6 (a) empowers The Board to revoke or suspend the license of any real estate broker or real estate salesman

heretofore issued under the provisions of the Act at any time "where the licensee in performing or attempting to perform any of the acts mentioned herein is deemed to be guilty of"; and then the statute enumerates eleven acts. The words "any of the acts mentioned herein" are not characterized by phrasal felicity or clarity, but they must mean, as the Iowa Court said in construing identical words in their Real Estate and Salesmen Act, the acts of a real estate broker or real estate salesman for which a license is required in G.S. 93A-1.

The eleven acts enumerated in the statute lack precision of statement, and this is particularly true of the eighth act enumerated. It is an accepted rule of statutory construction that in ascertaining the intent of the Legislature in case of ambiguity the language of the statute must be read contextually and with reference to the matters dealt with, the objects and purposes sought to be accomplished, and in a sense which harmonizes with the subject matter. *Cab Co. v. Charlotte*, 234 N.C. 572, 68 S.E. 2d 433; 50 Am. Jur., Statutes, sec. 292. It is also a recognized rule of statutory construction that when particular and specific words or acts, the subject of a statute, are followed by general words, the general words will be construed as applicable only to persons or things of the same general nature or class as those particularly and specifically enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, the specific words or acts would have been omitted. This is especially applicable to penal or criminal statutes. *Chambers v. Board of Adjustment*, 250 N.C. 194, 108 S.E. 2d 211; *Turner v. Board of Education*, 250 N.C. 456, 109 S.E. 2d 211; *Morecock v. Hood*, 202 N.C. 321, 162 S.E. 730; *S. v. Craig*, 176 N.C. 740, 97 S.E. 400; 82 C.J.S., Statutes, section 332 b.

Applying these rules of statutory construction, it seems evident that of the eleven acts enumerated in G.S. 93A-6 (a) authorizing revocation or suspension of a license, acts one, two, three, four, five, six, seven, nine and ten relate solely to the conduct of real estate brokers and salesmen as they are defined in G.S. 93A-2. And further applying said rules, the general language of act eight "Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interest of the public" must be construed as applying exclusively to activities in which the licensee has actually engaged in the pursuit of his licensed privilege as a real estate broker or salesman and not to some outside activity not connected in any way with the pursuit of his licensed privilege. We do not mention act eleven set forth in G.S. 93A-6 (a) for the reason The Board did not find Scott Dillingham guilty of violating that act.

In our opinion the California, Iowa and Missouri Courts have cor-

rectly construed their Real Estate Acts, and our decision is in harmony with them. We are not convinced by the reasoning of the New Jersey Court.

The portion of our Act which empowers The Board to revoke the license of a real estate broker or salesman is penal in its nature and should not be construed to include anything as a ground for revocation which is not embraced within its terms. The evidence offered by The Board to the effect that Scott Dillingham on 14 April 1959 pleaded guilty to a charge of operating a disorderly house, and on 8 March 1959 consented to the signing of a judgment against him padlocking for one year premises maintained and operated by him as a house of prostitution shows acts of a vile and decadent character committed by Scott Dillingham, but such acts are not connected in any way with the pursuit of his licensed privilege as a real estate broker, and are not a ground for revocation of his license theretofore issued. Consequently such evidence was correctly excluded by Judge Huskins as irrelevant and immaterial.

The Board assigns as error the exclusion by the court of the record in the case of *Mrs. Rubye A. Lowry v. Scott Dillingham* in the superior court of Buncombe County. The verdict of the jury in that case was that in May 1955 Scott Dillingham was guilty of fraud in selling to plaintiff a note secured by a deed of trust owned by Scott Dillingham. Judgment was signed in accord with the verdict. The Board also assigns as error the exclusion by the court of the record in the case of *R. Alvin Jennings et ux. v. Scott Dillingham* in the district court of the United States for the western district of North Carolina, Asheville Division. The verdict of the jury in that case was that in May 1955 Scott Dillingham was guilty of fraud in selling to plaintiffs a note secured by a deed of trust owned by him.

G.S. 93A-2 (a) defines a real estate broker within the meaning of the Act as "any person,* * *who for a compensation or valuable consideration or promise thereof sells or offers to sell, buys or offers to buy, auctions or offers to auction (specifically not including a mere crier of sales), or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or who sells or offers to sell leases of whatever character, or rents or offers to rent any real estate or the improvement thereon, for others, as a whole or partial vocation." (Emphasis added.) Subsection (c) of this statute states "The provisions of this chapter shall not apply to and shall not include any person,* * *who, as owner or lessor, shall perform any of the acts aforesaid with reference to property owned or leased by them, where such acts are performed in the regular course of or as an incident to the management of such property and the investment therein."

If we assume the truth of the facts upon which the verdicts in the *Lowry* and *Jennings* cases were based, Scott Dillingham's selling of his own notes secured by deeds of trust to Mrs. Rubye A. Lowry and R. Jennings *et ux.* did not make him a real estate broker as a real estate broker is defined in G.S. 93A-2 (a), and any misconduct in performing such acts does not warrant The Board or the court on appeal to revoke his license on such ground. Therefore, the records in those cases were irrelevant and immaterial, and properly excluded by the court. Having arrived at that opinion it is not necessary for us to decide whether or not the record in the two civil cases set forth above can be introduced in evidence under the provisions of G.S. 93A-6 (a) to establish the truth of the facts on which the verdicts in those cases were rendered, and it is not necessary for us to decide whether the provisions of our Real Estate Brokers and Salesmen Act will or will not be construed to have retrospective operation.

The Board having offered no competent evidence, it necessarily follows that the entry of a judgment of compulsory nonsuit by the court was proper.

Affirmed.