THE STATE OF NORTH CAROLINA v. CHARLOTTE LIBERTY MUTUAL IN-
SURANCE COMPANY

THE STATE OF NORTH CAROLINA v. GEORGE HENRY TALBOT

THE STATE OF NORTH CAROLINA v. MID-SOUTH INSURANCE COMPANY

THE STATE OF NORTH CAROLINA v. WALTER BURNS CLARK

No. 7810SC777

(Filed 6 February 1979)

**Elections § 15— insurance company's contributions to "John Ingram Breakfast"—
no violation of statutes**

An insurance company's contribution of money for an appreciation
breakfast for John Ingram after his reelection as Commissioner of Insurance of
North Carolina did not violate criminal statutes prohibiting the payment of
money by insurance companies for or in aid of any political organizations or
candidates or for "any political purpose whatsoever," G.S. 163-270 and G.S.
163-278.19(a).

Judge MARTIN (Harry C.) dissenting

APPEAL by the State of North Carolina from *Preston, Judge.*
Order entered 11 July 1978 in Superior Court, WAKE County.
Heard in the Court of Appeals 6 December 1978.

The facts in this case are undisputed. Defendant George
Talbot, President of defendant Charlotte Liberty Mutual In-
surance Company, received an invitation in the mail, after the
reelection of Ingram as Commissioner of Insurance of North
Carolina, which read:

"You are Invited to Join Commissioner and Mrs. John In-
gram Buffet Breakfast Saturday, January 8th, 1977 Eight
O'clock-Nine Thirty O'clock a.m. Velvet Cloak Inn, Raleigh,
North Carolina"

No further invitation or contact was received. While he was
seated at the breakfast, defendant Talbot was asked to make a
contribution to help pay the cost of the breakfast. Mr. Talbot

stated that he only had a company check and asked if it would be all right to use it. He was told that it would be all right to use a company check, because the breakfast was not a political function. Mr. Talbot then wrote a $500.00 check to "John Ingram Breakfast" on the account of Charlotte Liberty Mutual Insurance Company. The check was listed on the books and records of the company, just as written, under company contributions. No attempt has ever been made to hide the check or the fact of its existence.

On 11 April 1978, the State obtained criminal summons charging the defendants with violating G.S. 163-270 and G.S. 163-278.19(a).

The facts relating to defendants Walter Clark and Mid-South Insurance Company are essentially the same. Defendant Clark, President of defendant Mid-South Insurance Company, received an invitation to attend the appreciation breakfast for John Ingram, who had been elected and certified as Commissioner of Insurance of North Carolina. Defendant Clark was contacted by telephone three times before the breakfast and was asked whether he would contribute money to defray the expenses of the breakfast. Five hundred dollars was the amount suggested. After being assured that it was not a political function, Clark sent a company check for $500.00 to "John Ingram Appreciation Breakfast" from Fayetteville to Mr. Howard Bloom in Roanoke Rapids.

On 11 April 1978, the State filed criminal summons charging the defendants Clark and Mid-South Insurance Company with violating G.S. 163-270 and G.S. 163-278.19(a). All of the defendants moved to quash the summons on the grounds that either (1) the summons failed sufficiently to charge a criminal offense, or (2) the summons in each case charged violations of statutes which are unconstitutional as applied. The motions to quash were granted on both grounds by District Court Judge Winborne. On appeal to the Superior Court, Wake County, Judge Preston affirmed.

The State appeals pursuant to G.S. 15A-1445(a)(1).

State v. Ins. Co. and State v. Talbot and State v. Clark

*Attorney General Edmisten by Associate Attorney Christopher P. Brewer, for the State.*

*Cansler, Lockhart, Parker & Young, by Joe C. Young and Bruce M. Simpson, for defendant appellees, Charlotte Liberty Mutual Insurance Company and George Talbot.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Richard M. Wiggins and Donald W. McCoy, for defendant appellees, Mid-South Insurance Company and Walter Burns Clark.*

ERWIN, Judge.

The appellant contends that the Superior Court erred in affirming the District Court's order to quash the criminal summons, because the statutes involved are (1) constitutional on their face, (2) constitutional as applied, and (3) proscribe the conduct alleged in each summons. We hold that the summons in each case fails sufficiently to charge a criminal offense under G.S. 163-270 or G.S. 163-278.19(a).

G.S. 163-270 provides in relevant part:

"§ 163-270. *Using funds of insurance companies for political purposes.* — No insurance company or association, including fraternal beneficiary associations, doing business in this State shall, directly or indirectly, pay or use, or offer, consent or agree to pay or use, any money or property for or in aid of any political party, committee or organization, or for or in aid of any corporation, joint-stock company, or other association organized or maintained for political purposes, or for or in aid of any candidate for political office or for nomination for such office, or for any political purpose whatsoever. . . An officer, director, stockholder, attorney or agent for any corporation or association which violates any of the provisions of this section, who participates in, aids, abets, advises or consents to any such violation, and any person who solicits or knowingly receives any money or property in violation of this section, shall be guilty of a misdemeanor, and shall be punished by imprisonment for not more than one year and a fine of not more than one thousand dollars ($1,000)."

G.S. 163-278.19(a) provides in relevant part:

"§ 163-278.19. *Violations by corporations, business entities, labor unions, professional associations and insurance companies.* — (a) Except as provided in G.S. 163-278.19(b), it shall be unlawful for any corporation, business entity, labor union, professional association or insurance company directly or indirectly:

> (1) To make any contribution or expenditure (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business) in aid or in behalf of or in opposition to any candidate or political committee in any election or *for any political purpose whatsoever;*
>
> (2) To pay or use or offer, consent or agree to pay or use any of its money or property for or in aid of or in opposition to any candidate or political committee or for or in aid of any person, organization or association organized or maintained for political purposes, or for or in aid of or in opposition to any candidate or political committee or *for any political purpose whatsoever . . .*" (Emphasis added.)

G.S. 163-270 and G.S. 163-278.19(a) are both located in Chapter 163. G.S. 163-270 is located in Article 22, Subchapter VIII of Chapter 163, entitled "*Corrupt Practices and Other Offenses Against the Elective Franchise.*" G.S. 163-278.19(a) is located in Article 22A, Subchapter VIII of Chapter 163, entitled "*Regulating Contributions and Expenditures in Political Campaigns.*" When, as here, the meaning of a statute is in doubt, reference may be had to the title and context as legislative declarations of the purpose of the act. *Porter v. Yoder & Gordon Co.*, 246 N.C. 398, 98 S.E. 2d 497 (1957).

In *Louchheim, Eng & People v. Carson*, 35 N.C. App. 299, 304, 241 S.E. 2d 401, 404-05 (1978), we perceived the purpose of G.S. 163-278.19 to be identical to those of its federal counterpart. We said:

> "The purpose of the federal statute regulating campaign contributions and expenditures by corporations and labor

unions, 2 U.S.C. § 441(b) (1976) (formerly 18 U.S.C. § 610), which is similar in its language and scope to our own statute, is to protect the populace from undue influence by corporations and labor unions, and to insure the responsiveness of elected officials to the public at large. *United States v. C.I.O.*, 335 U.S. 106, 92 L.Ed. 1849, 68 S.Ct. 1349 (1948); Annot., 24 A.L.R. Fed. 162 (1975). As we read G.S. 163-278.19, we perceive its purposes to be identical to those of its federal counterpart. Our Legislature, as well as Congress, has specified that the advance of money by a corporation in behalf of a political candidate is frustrative of these purposes."

In *Louchheim, supra,* campaign contributions expressly prohibited by G.S. 163-278.19 were in question. In the instant case, no campaign contributions are involved. Mr. Ingram's election had been certified at the time of the contribution; he was not a candidate for politicial office.

G.S. 163-278.6(4) defines a candidate as follows: "The term 'candidate' means any individual who has filed a notice of candidacy for public office listed in G.S. 163-278.6(18) with the proper board of elections."

Nothing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning. *Transportation Service v. County of Robeson,* 283 N.C. 494, 196 S.E. 2d 770 (1973); *In re Trucking Co.,* 281 N.C. 242, 188 S.E. 2d 452 (1972).

The State contends that defendants' conduct in the instant cases fall within the ambit of the prohibitions of G.S. 163-270 and G.S. 163-278.19(a) because of the words employed in both statutes prohibiting the payment of money by insurance companies or their agents *for any political purpose whatsoever.*

Statutes creating penal offenses must be strictly construed. *State v. Ross,* 272 N.C. 67, 157 S.E. 2d 712 (1967); *In re Dillingham,* 257 N.C. 684, 127 S.E. 2d 584 (1962). *See also Schwartz v. Romnes,* 495 F. 2d 844 (2d Cir. 1974); *State ex rel. Wright v. Carter,* 319 S.W. 2d 596 (Mo. App. 1958). The doctrine of *ejusdem generis* is applicable here. The doctrine of *ejusdem generis* requires that general words of a statute which follow a designation

of particular subjects or things be restricted by the particular designations to things of the same kind, character, as nature and those specifically enumerated. *In re Dillingham, supra; accord, Schwartz v. Romnes, supra.*

After applying the doctrine of *ejusdem generis* in a similar statute, the Second Circuit Court of Appeals, in *Schwartz, supra,* noted the statute's purpose:

> "Thus the avowed objective was not to bar all corporate expenditures with respect to legislative matters generally but to probibit corporate contributions to candidates or parties, since such contributions might tend to create political debts . . ." 495 F. 2d 844, 850 (2d Cir. 1974).

Our Legislature had a similar purpose in enacting G.S. 163-278.19(a). *See Louchheim, supra.* We hold that the criminal summons fail to state an offense within the ambit of these statutes. We note the recent enactment in 1977 of G.S. 163-278.36 in rendering our decision. The statute provides:

> "§ 163-278.36. *Elected officials to report funds.* — All contributions to, and all expenditures from any 'booster fund,' 'support fund,' 'unofficial office account' or any other similar source which are made to, in behalf of, or used in support of any person holding an elective office for any political purpose whatsoever during his term of office shall be deemed contributions and expenditures as defined in this Article and shall be reported as contributions and expenditures as required by this Article. The annual report shall show the balance of each separate fund or account maintained on behalf of the elected office holder."

G.S. 163-270 and G.S. 163-278.19(a) are directed at an evil other than the one presented here. There is no showing of any attempt to influence an elected official. The fact that a particular activity may be within the same general classifications and policy of those covered does not necessarily bring it within the ambit of the criminal prohibitions involved here. *See United States v. Boston & Maine R.R.,* 380 U.S. 157, 13 L.Ed. 2d 728, 85 S.Ct. 868 (1965); *accord, State v. Terre Haute Brewing Co.,* 186 Ind. 248, 115 N.E. 772 (1917).

State v. Ins. Co. and State v. Talbot and State v. Clark

Our holding that the summons in these cases fail sufficiently to charge an offense within the ambit of these statutes dispenses with the need to resolve the constitutional challenges raised by defendants.

The order entered below is

Affirmed.

Chief Judge MORRIS concurs.

Judge MARTIN (Harry C.) dissents.

Judge MARTIN (Harry C.) dissenting.

Each corporate defendant was charged by separate criminal summons with violating N.C.G.S. 163-270 and N.C.G.S. 163-278.19. Each individual defendant was charged by separate criminal summons with aiding and abetting the respective corporate defendants in violating these statutes; all summons were substantially the same. The summons against Charlotte Liberty Mutual is as follows:

THE UNDERSIGNED FINDS THAT THERE IS PROBABLE CAUSE TO BELIEVE that on or about the eighth day of January, 1977, in the county named above, the Charlotte Liberty Mutual Insurance Company was an insurance company doing business in North Carolina and did pay five hundred dollars in United States currency for and in behalf of and in aid of the successful candidate for the political office of Commissioner of Insurance of the State of North Carolina John Randolph Ingram and for the political purpose of honoring the said Commissioner and demonstrating widespread grass roots support for his programs by support of a large attendance at an appreciation breakfast preceding his inaugural ceremonies in violation of GS 163-270 and GS 163-278.19(a); that the said money was paid by means of a corporate check dated January 8, 1977, payable to John Ingram Breakfast in the amount of $500.00 drawn against account number 1030162 of North Carolina National Bank, Charlotte, N. C., signed George H. Talbor [sic] and Lorraine Woods, a copy of which is attached and incorporated herein by reference.

State v. Ins. Co. and State v. Talbot and State v. Clark

The district court had original jurisdiction of these cases. The district court judge quashed each summons for either failing to charge a criminal offense or being based upon statutes unconstitutional in their application. The district court judge did not state upon which reason his order was based.

The State appealed to superior court pursuant to N.C.G.S. 15A-1432(a)(1). The superior court entered an order pursuant to N.C.G.S. 15A-1432(e) affirming the judgment of the district court. The State appealed to this Court pursuant to N.C.G.S. 15A-1445(a)(1).

The learned majority holds the summons in these cases do not sufficiently charge an offense within the meaning of the statutes and for this reason affirmed the superior court judge in quashing the process. They did not reach or resolve any constitutional challenges to the statutes.

Under this holding the sole question is whether the summons allege sufficient facts to charge a crime proscribed by the statutes. This depends solely upon the language in the summons. The statutes in question are written in plain, everyday words. I find no doubt as to the meaning of the statutes. Their meaning is clear. As applied to these charges, they simply mean no insurance company shall pay any money for or in aid of any political organization or association organized for political purposes, or pay any money in aid of any candidate. N.C. Gen. Stat. 163-270 and N.C. Gen. Stat. 163-278.19.

The standards to be applied in passing upon motions to quash criminal warrants are set forth in *State v. Greer*, 238 N.C. 325, 77 S.E. 2d 917 (1953). In *Greer*, Parker, J. (later Chief Justice), speaking for the Court says:

> The authorities are in unison that an indictment, whether at common law or under a statute, to be good must allege lucidly and accurately all the essential elements of the offense endeavored to be charged. The purpose of such constitutional provisions is: (1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court,

on conviction or plea of *nolo contendere* or guilty to pronounce sentence according to the rights of the case.

. . . To simplify forms of indictment G.S. 15-153 was enacted which in respect to quashing indictments provides in respect to indictments that every criminal proceeding by indictment is sufficient in form for all intents and purposes if it expresses the charge in a plain, intelligible, and explicit manner, and the same shall not be quashed, by reason of any informality or refinement, if in the bill sufficient matters appear to enable the court to proceed to judgment.

The quashing of indictments is not favored. *State v. Flowers,* 109 N.C. 841, 13 S.E. 718 (1891). The general rule in North Carolina is that an indictment for a statutory offense is sufficient if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words. *State v. Gregory,* 223 N.C. 415, 27 S.E. 2d 140 (1943). An indictment may follow the language of the statute when the statute defines the offense and contains all that is essential to constitute the crime and to inform the accused of its nature; but if a particular clause in a statute does not set forth all the essential elements of the specified act intended to be punished, such elements must be charged in the bill. *State v. Cole,* 202 N.C. 592, 163 S.E. 594 (1932).

When these standards are applied to these cases, it is clear that the criminal summons are sufficient to withstand the motions to quash. By placing the summons alongside the statutes, it can be plainly seen that the summons state a charge under the statutes:

| Statutes | Summons |
|---|---|
| 1. No insurance company shall | 1. Charlotte Liberty Mutual Insurance Company |
| 2. pay money | 2. paid $500 by check |
| 3. to or in aid of | 3. to or in aid of |
| 4. any association | 4. "John Ingram Breakfast" |
| 5. organized for political purposes, or [pay money] for or in aid of any candidate for political office. | 5. organized for political purpose of honoring and demonstrating support for Ingram and in aid of Ingram successful candidate for Commissioner of Insurance. |

Surely, the payments were to aid John Ingram. The summons do not state where the breakfast was held or the menu, but $500 for breakfast would be unreasonable in New York City or Paris, *a fortiori*, Raleigh.

The majority holds Ingram was no longer a "candidate" within the meaning of the statutes at the time of the payments because the election was completed. True, N.C.G.S. 163-278.6(4) defines "candidate," and Ingram fell within that definition. That statute does not state when one ceases to be a "candidate." To hold that an insurance company can contribute to a person after he is elected but not before, is plainly contrary to the intent of the legislature.

To hold as a matter of law that the "John Ingram Breakfast" was not an "association organized . . . for political purposes" within the meaning of the applicable statutes is to ignore the political facts of life in North Carolina.

The summons identify with certainty the offense: the giving of $500.00 to "John Ingram Breakfast," an association organized for political purposes, in aid of Ingram. They state facts to prevent double jeopardy: the date, amount, recipient and purpose of the payment is alleged; the checks are attached to the summons. Those facts are sufficient to enable the defendants to prepare for trial. The summons are sufficient to advise the court of the crime alleged, the statutes violated, and to enable the court to pass sentence.

The summons comply with the standards set forth in *Greer*, *supra*, and N.C.G.S. 15-153.

The majority holds that the statutes "are directed at an evil other than the one presented here." I find that the evil presented here is a violation of the statutes and that the summons properly so allege. I vote to hold the summons are valid and to reverse the judgment of the superior court.