Justice EARLS concurring.
I concur with the analysis in the majority opinion, but write separately to note a threshold matter of immunity and jurisdiction which I would have considered sua sponte. On 9 April 2013 Governor Pat McCrory signed into law Session Law 2013-23, titled, in part, "An Act to Provide Limited Immunity From Prosecution for (1) Certain Drug-Related Offenses Committed by an Individual Who Seeks Medical Assistance for a Person Experiencing a Drug-Related Overdose and (2) Certain Drug-Related Offenses Committed by an Individual Experiencing a Drug-Related Overdose and In Need of Medical Assistance." 2013 N.C. Sess. Laws 72, 72-73 (codified as amended at N.C.G.S. §§ 90-96.2 & 90-106.2 ) (2019). Passed with overwhelming majorities in the state House and Senate, see https://www.ncleg.gov/BillLookUp/2013/S20, the **633 bill was referred to as the "Good Samaritan Law/Naloxone Access Law" and went into effect immediately. S.L. 2013-23, § 4, 2013 N.C. Sess. Laws at 73.
In Section 1, the law amended Article 5 of Chapter 90 of the General Statutes to add a new section titled "Drug-related overdose treatment; limited immunity." S.L. 2013-23, § 1, 2013 N.C. Sess. Laws at 72. The statute provided that:
A person who experiences a drug-related overdose and is in need of medical assistance shall not be prosecuted for ... (iii) a felony violation of G.S. 90-95(a)(3) possession of less than one gram of heroin ... if the evidence for prosecution under those sections was obtained as a result of the drug-related overdose and need for medical assistance.
Id.
This law was in effect on 17 November 2014 when police received a 911 call that there was an overdose at a Days Inn in *338 Archdale. Under the terms of that statute,[6] neither Shelley Osborne nor anyone who, in good faith, was seeking medical assistance for her that day could be prosecuted for possession of less than one gram of heroin. I concur that, to the extent we are only examining the sufficiency of the evidence here, without regard to the question of the admissibility of any of the evidence, all of the evidence contained in the record taken in the light most favorable to the State was sufficient to prove that the substance possessed by Shelley Osborne was heroin. And I concur that the case should be remanded to the Court of Appeals for consideration of defendant's remaining challenge to the trial court's judgment, which was the argument that, "[i]n the alternative, the trial court plainly erred by admitting testimony identifying the substance as heroin, by allowing an officer to conduct a field test in front of the jury, and by admitting testimony that the result of the field test indicated heroin." The Court of Appeals should also address on remand the question of the application of N.C.G.S. § 90-96.2 to this case.
North Carolina's Good Samaritan/Naloxone Access Law was passed at a time when state public health officials had reported a 300 percent increase in the number of overdose deaths in North Carolina in just over a decade, from 297 in 1999 to 1,140 in 2011. See Injury and **634 Violence Prevention Branch, North Carolina Division of Public Health, Prescription & Drug Overdoses , (2013), http://injuryfreenc.ncdhhs.gov/About/PoisoningOverdoseFactSheet2013.pdf. The General Assembly made the decision that encouraging individuals suffering from an overdose, and those Good Samaritans who might be with them, to seek medical help to save lives was more important than prosecuting those individuals for possession of less than one gram of heroin.[7]
Ultimately, the question I would start with in deciding this case is whether the Good Samaritan/Naloxone Access Law's immunity is waived if not affirmatively asserted, or whether, like subject matter jurisdiction, it can be raised at any time. Cf. State v. Sturdivant , 304 N.C. 293, 307-08, 283 S.E.2d 719, 729-30 (1981) (noting that an argument that the trial court lacked subject matter jurisdiction may be raised at any time after a verdict); Willowmere Cmty. Ass'n v. City of Charlotte , 370 N.C. 553, 561, 809 S.E.2d 558, 563-64 (2018) (holding that since standing is a necessary prerequisite to a court's subject matter jurisdiction, it can be challenged at "any stage of the proceedings, even after judgment" (quoting In re T.R.P. , 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006) )). The court always has the obligation to inquire into and be certain of its jurisdiction. See generally Lemmerman v. A.T. Williams Oil Co. , 318 N.C. 577, 580, 350 S.E.2d 83, 85-86 (1986) ("Every court necessarily has the inherent judicial power to inquire into, hear and determine questions of its own jurisdiction, whether of law or fact, the decision of which is necessary to determine the questions of its jurisdiction." (quoting Burgess v. Gibbs , 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964) )); see also N.C.G.S. § 1A-1, Rule 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added)); Catawba Cty. v. Loggins , 370 N.C. 83, 100, 804 S.E.2d 474, 486 (2017) (Martin, C.J., concurring in the result only) ("Courts always have jurisdiction to determine subject-matter jurisdiction, but they do not always have-in fact, they usually do not have-the power to determine other matters unless asked to do so by a party."). In Loggins , the Court explained that where the *339 legislature has established the court's jurisdiction by state statute, subject **635 to certain limitations, the court has no jurisdiction to exceed those limits, stating:
Jurisdiction is "[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it." The court must have personal jurisdiction and, relevant here, subject matter jurisdiction "or '[j]urisdiction over the nature of the case and the type of relief sought,' in order to decide a case." "The legislature, within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State." "Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction."
370 N.C. at 88, 804 S.E.2d at 478 (alterations in original) (first quoting T.R.P. , 360 N.C. at 590, 636 S.E.2d at 789-90 ; then quoting T.R.P. at 590, 636 S.E.2d at 790 ; then quoting Bullington v. Angel , 220 N.C. 18, 20, 16 S.E.2d 411, 412 (1941) ; then quoting Eudy v. Eudy , 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975), overruled on other grounds by Quick v. Quick , 305 N.C. 446, 457-58, 290 S.E.2d 653, 661 (1982) ). In an analogous situation, where the issue was whether the court had jurisdiction to prosecute the defendant because of a factual dispute over where the crime occurred, this Court acknowledged that when a defendant challenges the jurisdiction of the court,
the defendant is contesting the very power of this State to try him. We are of the view that a question as basic as jurisdiction is not an "independent, distinct, substantive matter of exemption, immunity or defense" and ought not to be regarded as an affirmative defense on which the defendant must bear the burden of proof. Rather, jurisdiction is a matter which, when contested , should be proven by the prosecution as a prerequisite to the authority of the court to enter judgment.
State v. Batdorf , 293 N.C. 486, 493, 238 S.E.2d 497, 502 (1977) (quoting State v. Davis , 214 N.C. 787, 793, 1 S.E.2d 104, 108 (1939) ); see also State v. Covington , 267 N.C. 292, 295-96, 148 S.E.2d 138, 141-42 (1966) (holding that where lack of jurisdiction appears on the face of the record, this Court, ex mero motu , arrests the judgement).
**636 Thus, it is appropriate for the Court of Appeals on remand to address whether the Good Samaritan/Naloxone Law is a limit on the court's jurisdiction to prosecute defendant in this case, by directing that a person who experiences a drug-related overdose and is in need of medical assistance "shall not be prosecuted" for possession of less than one gram of cocaine, or, more generally, if not purely jurisdictional, whether it is an issue that can be waived.
Certainly the first place to begin is the language of the statute itself. If unambiguous, "there is no room for judicial construction." Lee v. Gore , 365 N.C. 227, 230, 717 S.E.2d 356, 358 (2011) (citing Walker v. Bd. of Trs. of N.C. Local Gov'tal Emps.' Ret. Sys. , 348 N.C. 63, 65-66, 499 S.E.2d 429, 430-31 (1998) ); see also State v. Ellison , 366 N.C. 439, 443, 738 S.E.2d 161, 164 (2013) (applying opium trafficking statute's clear and unambiguous language that prohibits trafficking in mixtures containing opium derivatives); Burgess v. Your House of Raleigh, Inc. , 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) (noting that legislative purpose is first determined from the plain words of the statute). The law uses the term "shall not" which is mandatory, not permissive. State v. Johnson , 298 N.C. 355, 361, 259 S.E.2d 752, 757 (1979) (citing Black's Law Dictionary 1541 (4th rev. ed. 1968)) ("As used in statutes, the word 'shall' is generally imperative or mandatory."). If a person in defendant's circumstances "shall not" be prosecuted, there is no room for discretion to prosecute them.
It is also instructive that the statute does not say "it shall be a defense to the crime of possession of less than one gram of heroin that ...." The legislature is aware of the various defenses available in criminal law, and, indeed, has passed statutes requiring a defendant to give notice before trial if they intend to assert certain defenses. See N.C.G.S. § 15A-905(c) ; see also *340 State v. Rankin , 371 N.C. 885, 893, 821 S.E.2d 787, 794 (2018) ("If the General Assembly wanted to enable a trash collector to be criminally charged for doing his or her job and forced to demonstrate his or her innocence by proving an affirmative defense at trial, it could have indicated as much in the statute."). "It is always presumed that the legislature acted with care and deliberation and with full knowledge of prior and existing law." State v. Benton , 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970) (citations omitted). The fact that the statute at issue in this case is not framed as a defense to a criminal prosecution but rather a grant of immunity is apparent from the plain language of the statute.
The goal of statutory construction is to ensure that the purpose of the legislature is accomplished. State ex rel. Hunt v. N.C. Reinsurance Facil. , 302 N.C. 274, 288, 275 S.E.2d 399, 405 (1981) (citing **637 In re Dillingham , 257 N.C. 684, 694, 127 S.E.2d 584, 591 (1962) ). This Court has observed that "[c]ourts also ascertain legislative intent from the policy objectives behind a statute's passage 'and the consequences which would follow from a construction one way or another.' " Elec. Supply Co. of Durham v. Swain Elec. Co. , 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (quoting Campbell v. Church , 298 N.C. 476, 484, 259 S.E.2d 558, 564 (1979) ). The legislature's intent in passing N.C.G.S. § 90-96.2 was to ensure that victims of drug overdoses, and those who may be with them or come across them, do not refrain from seeking medical attention out of fear of criminal prosecution. In light of the opioid overdose epidemic in this state, the legislature enacted a policy to sacrifice prosecutions for possession of small amounts of drugs in order to save lives. Treating section N.C.G.S. 90-96.2(c) as anything other than a jurisdictional requirement that must be established by the State would severely undercut that policy.
As a Pennsylvania intermediate appellate court addressing that state's version of an overdose immunity statute noted:
Moreover, the Legislature intended for prosecutors and police to refrain from filing charges when sorting through the aftermath of the unfortunately all-too-common overdose. The statute discourages the authorities from commencing the criminal justice process, i.e. by placing a limitation upon the charging power, to provide more incentive for reporters to call. ... It would significantly undercut the statute's goal to conclude, as the Commonwealth urges, that the Act merely provides a defense, thereby requiring an overdose victim or a reporter to litigate the issue of immunity. We find that the statute clearly contemplates that a large number of these cases will never reach the courtroom halls; hence, the prohibition against charging a person.
Commonwealth v. Markun , 185 A.3d 1026, 1035-36 (Pa. Super. Ct. 2018). Pennsylvania's statute contains conspicuous differences from the original N.C.G.S. § 90-96.2 and explicitly places a burden on the defendant to establish certain criteria in order to receive its particular protections, nevertheless the Pennsylvania court concluded that the statute confers immunity, similar to sovereign immunity, that is not waived if raised for the first time on appeal, and creates a duty of the prosecution not to bring charges if the Act applies to the defendant's circumstances. Id. at 1031-40. The application of this immunity in North Carolina's Good Samaritan/Naloxone Access law is not something that was tacitly **638 waived by defendant here, but rather the State was required to prove that the immunity did not apply in order to proceed with prosecution for this particular offense.
Beyond the question of whether the limited immunity conferred by this statute is intended to be immunity from prosecution or a defense to a prosecution, there further remains the question of whether the law actually applies to Ms. Osborne. There is no dispute in the record that law enforcement personnel were called to provide aid to an overdose victim. Arriving first, Officer Flinchem found defendant unconscious, unresponsive, and turning blue, apparently from a heroin overdose. After Officer Flinchem insured that it was safe for EMS to enter, EMS entered the room and was able to revive defendant, who confirmed that she had ingested heroin. Officer Flinchem and two other officers who also responded to the *341 call found drug paraphernalia and a "little piece of heroin."
The evidence for prosecution was obtained as a result of the need for medical assistance. Defendant was indicted, tried and convicted of a felony violation of N.C.G.S. § 90-95(a)(3), one of the statutes referenced in the Good Samaritan/Naloxone Access Law. What arguably is unclear is whether the amount of heroin at issue was less than one gram, as the only evidence in the record concerning the amount is that it was a "little piece of heroin." Given the language and intent behind N.C.G.S. § 90-96.2(c), the State in these circumstances bears the burden of establishing that the amount was one gram or more. Although the weight of the substance is not an element of the offense of possession, the immunity statute means that the weight of the substance needs to be known where all the other elements of immunity are present. That is the only way to effectuate the intent of the legislature that people who call police or medical personnel for treatment because they are experiencing a drug-related overdose shall not be prosecuted for possessing less than one gram of the drug.

N.C.G.S. § 90-96.2 was further amended in 2015; the new version applies to offenses committed on or after 1 August 2015. Act of June 10, 2015, S.L. 2015-94, §§ 1, 4, 2015 N.C. Sess. Laws 191, 191-92, 194.

The original statute also provided that "[n]othing in this section shall be construed to bar the admissibility of any evidence obtained in connection with the investigation and prosecution of other crimes committed by a person who otherwise qualified for limited immunity under this section." S.L. 2013-23, § 1 (d), 2013 N.C. Sess. Laws at 72. In this case, defendant was also convicted of two counts of misdemeanor child abuse based on the fact that her two children under the age of sixteen were in the hotel room at the time she overdosed. The statute does not provide immunity from prosecution for those offenses and they are not at issue here.