DOLORES D. SIMONEL, Petitioner v. NORTH CAROLINA SCHOOL OF THE ARTS; THE UNIVERSITY OF NORTH CAROLINA; and ALEXANDER C. EWING, Respondents

No. COA95-71

(Filed 15 August 1995)

**Colleges and Universities § 12 (NCI4th)— N.C. School of the Arts—decision not to renew teacher's contract—decision made upon unlawful procedure**

The trial court did not err in concluding that the chancellor of the N.C. School of the Arts exceeded his authority under the school's regulations by reviewing and rejecting a faculty grievance committee's report finding that his decision not to renew a faculty member's contract was based upon the impermissible ground of personal malice and that the final decision not to reappoint the faculty member was thus made upon an unlawful procedure where the regulations gave the faculty member the right to request a faculty grievance committee review of the chancellor's decision before appealing to the school's board of trustees; the faculty member exercised this right; and no provision of the regulations allowed the chancellor to review the faculty grievance committee report. The chancellor's general supervisory authority set forth in N.C.G.S. § 116-34(a) must be exercised consistent with the express language of the school's regulations.

**Am Jur 2d, College and Universities §§ 1, 11, 16.**

Appeal by respondents from judgment filed 3 October 1994 by Judge Howard R. Greeson, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 6 June 1995.

**SIMONEL v. N.C. SCHOOL OF THE ARTS**

[119 N.C. App. 772 (1995)]

*Elliot, Pishko, Gelbin & Morgan, P.A., by Robert M. Elliot, for petitioner-appellee.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas J. Ziko, for respondent-appellants.*

MARTIN, MARK D., Judge.

Respondents appeal from judgment concluding the North Carolina School of Arts failed to follow its own regulations governing the review of petitioner's non-reappointment. We affirm.

On 30 August 1988 petitioner Dolores Simonel entered into a five-year, fixed-term contract as a faculty member of respondent North Carolina School of the Arts (NCSA). Petitioner's contract was expressly made subject to the NCSA Regulations on Academic Freedom and Faculty Appointments, Promotions, and Discharge (NCSA Regulations).

On 5 June 1992, following the required institutional review of petitioner's performance, NCSA Chancellor Alex C. Ewing informed petitioner of his decision not to renew her appointment to the NCSA faculty. Pursuant to section 8a of the NCSA Regulations, petitioner requested and was granted a meeting with Chancellor Ewing to discuss the reasons for non-reappointment. In a letter dated 12 June 1992, Chancellor Ewing restated his decision not to renew petitioner's contract.

On 23 June 1992, pursuant to section 8b, footnote 3 of the NCSA Regulations, petitioner requested review of the Chancellor's decision by the NCSA Faculty Grievance Committee (FGC). Petitioner appealed the Chancellor's decision on the grounds that it was based upon personal malice, violated her academic freedom, and violated her rights to procedural and substantive due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, section 19 of the North Carolina Constitution. In November 1992 the FGC conducted a hearing and found that the decision not to reappoint petitioner was (1) based upon the impermissible ground of personal malice; and (2) not based upon the impermissible ground of violation of First Amendment rights. The FGC sent a report to the Chancellor stating its findings. The Chancellor reviewed the FGC's decision and entered his second decision not to renew petitioner's contract.

In accordance with section 8b of the NCSA Regulations, petitioner appealed to the NCSA Board of Trustees. Petitioner contended the decision not to reappoint her was based upon the impermissible grounds of (1) personal malice (2) violation of petitioner's First Amendment Rights, and (3) unlawful age discrimination. In addition, petitioner contended the reappointment process violated her rights to procedural and substantive due process of law as guaranteed under the federal and state constitutions. A committee, appointed by the Board of Trustees, determined petitioner did not establish that failure to renew her contract was based on impermissible grounds. The committee, however, did not address petitioner's procedural claim.

Pursuant to section 8d of the NCSA Regulations and section 501C(4) of the Code of the Board of Governors of the University of North Carolina (the Code), petitioner appealed the Board of Trustees' decision to the President and Board of Governors of the University of North Carolina. On 10 September 1993 the Board affirmed the decision not to renew petitioner's contract and rejected her contention that Chancellor Ewing's review of the FGC decision was a procedural violation of the NCSA Regulations.

Petitioner then filed a petition for judicial review pursuant to N.C. Gen. Stat. § 150B-43. In her petition, she claimed the Board of Governors erred in affirming the NCSA's decision and alleged that the decisions of the Board of Governors and the NCSA were made upon unlawful procedure.

The trial court concluded in pertinent part:

1. Section 8b of the Regulations provides for review of the Chancellor's decision concerning non-reappointment of a faculty member. Within that procedure, footnote 3 permits the faculty member to request review by the Faculty Grievance Committee. There was no authority in the Regulations for the decision of the Faculty Grievance Committee to be reviewed by the Chancellor.

. . . .

3. Since the Chancellor exceeded his authority under the Regulations and respondents' decision was made upon an unlawful procedure, the substantial rights of the petitioner may have been prejudiced in violation of N.C.G.S. § 150B-51(b) . . . .

The trial court ordered the reinstatement of petitioner to her former position for one year, and ordered the NCSA to fairly evaluate her during that period.

The question presented on appeal is whether the trial court erred in concluding that "the Chancellor exceeded his authority under the Regulations and respondents' decision was made upon an unlawful procedure."

Respondents contend the trial court erred in its construction of the review procedure set forth within the NCSA Regulations. Respondents argue that, under the NCSA Regulations, the FGC's authority is strictly advisory and the Chancellor retains the ultimate authority to reject the FGC's recommendations.

On appeal from a lower court's consideration of a final agency decision under the Administrative Procedure Act, N.C. Gen. Stat. §§ 150B-1, *et seq.*, our scope of review is to determine whether the trial court committed any errors of law. *Alexander v. N.C. Department of Human Resources*, 116 N.C. App. 15, 17, 446 S.E.2d 847, 849-850, *disc. review denied*, 338 N.C. 514, 452 S.E.2d 805 (1994). Moreover, an administrative agency's interpretation of its own regulation should be accorded due deference unless it is plainly erroneous or inconsistent with the regulation. *Pamlico Marine Co. Inc., v. N.C. Dept. of Natural Resources*, 80 N.C. App. 201, 206, 341 S.E.2d 108, 112 (1986).

Pursuant to authority granted by the Board of Governors of the University of North Carolina, the NCSA adopted regulations governing faculty employment policies. *The Code of the Board of Governors of the University of North Carolina*, § 602. The NCSA Regulations set forth specific procedures that employees seeking review of non-reappointment decisions must follow. Petitioner's contract with NCSA was expressly made subject to the NCSA Regulations.

Section 3c.(5) of the NCSA Regulations provides in pertinent part: "The Chancellor shall inform the faculty member . . . whether the faculty member's reappointment will be recommended to the Board of Trustees. This decision is final <u>except as it may later be reviewed in accordance with the provisions of Section 8</u>."

Section 8(b) of the NCSA Regulations states:

b. <u>Request for Review by the Board of Trustees; Scope of Review</u>

Within five days after he receives notice of an unfavorable action resulting from the conference with the Chancellor, <u>the faculty member may request a review of the decision not to reappoint</u>

him by the Board of Trustees or a Board committee of not less than three members. [footnote 3]. Such review may be had solely to determine whether the decision not to reappoint was based upon any of the grounds stated to be impermissible in Section 3 d.

North Carolina School of Arts, *Regulations on Academic Freedom and Faculty Appointments, Promotions, and Discharge,* as approved by the Board of Governors of the University of North Carolina, August 8, 1980. (emphasis added).

Footnote 3 states:

> If the faculty member so desires, he may first request a review by the Faculty Grievance Committee. Such a review may be had solely to determine whether the decision not to re-appoint was based upon any of the grounds stated to be impermissible in Section 3d.

*Id.* (emphasis added).

The NCSA Regulations expressly gave petitioner the right to request FGC review of the Chancellor's final decision before appealing to the Board of Trustees. Petitioner exercised this right, and the FGC determined the Chancellor's decision not to reappoint was based upon impermissible grounds. We believe the Chancellor's subsequent review and ultimate rejection of the FGC's report does not comport with the review procedure expressly set forth in the NCSA Regulations.

In our view this construction is compelled by the express language of the NCSA Regulations as approved by the University of North Carolina Board of Governors pursuant to section 602 of the Code. There is no express provision within the NCSA Regulations which allowed the Chancellor to review the FGC report authorized by section 8b, footnote 3 of the NCSA Regulations.

Accordingly, we conclude the trial court did not err in concluding "the Chancellor exceeded his authority under the Regulations and respondents' decision was made upon an unlawful procedure."

We are not unmindful that N.C. Gen. Stat. § 116-34(a) vests supervisory authority in the Chancellor of each constituent institution of the University of North Carolina:

The chancellor . . . shall exercise complete executive author-
ity . . . subject to the direction of the President. He shall be
responsible for carrying out policies of the Board of Governors
and of the board of trustees.

N.C. Gen. Stat. § 116-34(a) (1994). See also Code of the Board of
Governors of the University of North Carolina, § 502B(4). However,
this general supervisory authority must be exercised consistent with
the express language of the NCSA Regulations governing petitioner's
employment contract with the NCSA.

Affirmed.

Judges EAGLES and WYNN concur.