STEPHEN S. ELLIOTT, PH.D., PETITIONER v. NORTH CAROLINA PSYCHOLOGY BOARD, RESPONDENT

No. COA96-391

(Filed 17 June 1997)

1. **Physicians, Surgeons, and Other Health Care Professionals § 54 (NCI4th)— psychologist—ethical principles—dual relationships—former clients—unprofessional conduct**

    The Psychology Board did not err in its determination that petitioner psychologist violated an ethical principle regarding dual relationships with clients by entering into sexual relationships with two former clients within months after the termination of therapy and by dating two former clients, even though the ethical principle in effect at the time of petitioner's alleged misconduct did not explicitly prohibit romantic involvement with former clients.

    **Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 74 et seq.**

2. **Physicians, Surgeons, and Other Health Care Professionals § 54 (NCI4th)— psychologist—personal problems—failure to seek professional assistance—ethical violation**

    The Psychology Board's conclusion that petitioner, a licensed psychologist, violated an ethical principle requiring psychologists to seek professional assistance when they are aware that their

personal problems may interfere with their professional effectiveness was supported by the record which contained evidence of petitioner's personal problems which contributed to the poor judgment petitioner exercised in relationships with former clients and no evidence that the petitioner sought assistance as required by the ethical guidelines.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 74 et seq.**

3. **Physicians, Surgeons, and Other Health Care Professionals § 54 (NCI4th)— Psychology Board—suspension of license—not arbitrary or capricious**

The Psychology Board did not act arbitrarily or capriciously in suspending petitioner psychologist's license for sixty months, with an active period of suspension of thirty days, and in requiring petitioner to practice under the supervision of a licensed psychologist for the remaining period of the suspension based upon petitioner's violation of ethical principles by entering into sexual relationships with two former patients and dating two other former patients.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 74 et seq.**

Appeal by petitioner from order entered 2 January 1996 by Judge J.B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 6 January 1997.

The petitioner is a psychologist licensed by the North Carolina Psychology Board ("the Board") and by the Virginia Board of Professional Counselors. Petitioner resided and was employed in private practice in Martinsville, Virginia until September 1987, when he relocated to Winston-Salem, North Carolina. The incidents which gave rise to complaints against petitioner all occurred in Virginia prior to petitioner's relocation.

From August 1984 to February 1985, petitioner engaged in a therapeutic counseling relationship with an adult female client. The client sought treatment for, among other things, marital problems. She separated from her husband during the summer of 1985 and began a social relationship with petitioner approximately one month after the last therapy session. During the same period of time, petitioner became separated from his wife. He began a sexual relation-

ship with this client by December 1985 which lasted approximately one year.

From May 1985 to July 1985, petitioner engaged in a therapeutic relationship with a second adult female client. This client sought counseling for marital problems and also subsequently became separated from her husband. In January 1986, approximately six months after the termination of therapy, petitioner began dating this client and had a social and sexual relationship with her that lasted approximately two years. During the approximate period of 1986 and 1987, petitioner also had several dates with two other former therapy clients.

The first female client filed a complaint against petitioner with the Virginia Board of Professional Counselors. The Virginia Board entered into a consent order with petitioner on 24 April 1992, which concluded that petitioner had violated various principles of the Regulations of the Board of Professional Counselors (1982). The Virginia Board reprimanded petitioner and ordered him to submit an academic research paper regarding the prohibition against dual relationships of a sexual nature with clients.

The North Carolina Psychology Board became aware of the disciplinary action taken against petitioner by the Virginia Board and conducted its own hearing into the allegations on 27 January 1994. The Board found that petitioner had violated Principles 2(f) and 6(a) of the American Psychological Association's Ethical Principles of Psychologists, which are adopted by reference in the North Carolina Psychology Practice Act. N.C. Gen. Stat. § 90-270.15(a)(10) (1993 & Supp. 1996). The Board suspended petitioner's license for sixty months, with an active period of suspension of thirty days. During the remaining period of the suspension, the Board ordered petitioner to practice under the supervision of a licensed psychologist, with supervisory emphasis on the issues of professional ethics and setting proper boundaries with female patients. Petitioner was also ordered to undergo therapy and evaluation with a psychologist other than his supervisor until released by the evaluating psychologist.

Petitioner sought judicial review in the Wake County Superior Court. The matter was heard on 28 November 1995 by Judge J.B. Allen, Jr. The trial court affirmed the Board's decision and stayed enforcement of the order pending petitioner's appeal to this Court. Petitioner appeals.

ELLIOTT v. N.C. PSYCHOLOGY BD.

[126 N.C. App. 453 (1997)]

*Michael F. Easley, Attorney General, by Robert M. Curran, Assistant Attorney General, for the State.*

*Harry H. Harkins, Jr. for petitioner appellant.*

ARNOLD, Chief Judge.

[1] Petitioner first argues that the Psychology Board erroneously concluded that he violated Principle 6(a) of the Ethical Principles of Psychologists. Under the Psychology Practice Act, the Board has authority to discipline any psychologist found "guilty of . . . unprofessional, or unethical conduct as defined in . . . the then-current code of ethics of the American Psychological Association . . . ." N.C. Gen. Stat. § 90-270.15(a)(10) (1993 & Supp. 1996).

The scope of review on appeal from a lower court's consideration of a final agency decision under the Administrative Procedure Act, N.C. Gen. Stat. §§ 150B-1 to -52 (1995), is to determine whether the trial court committed any errors of law. *Simonel v. N.C. School of the Arts,* 119 N.C. App. 772, 775, 460 S.E.2d 194, 196 (1995). In any case, "an administrative agency's interpretation of its own regulation should be accorded due deference unless it is plainly erroneous or inconsistent with the regulation." *Id.*

Principle 6(a) of the Ethical Principles of Psychologists, in effect at the time of petitioner's alleged misconduct, provided as follows:

> Psychologists are continually cognizant of their own needs and of their potentially influential position vis-à-vis persons such as clients, students, and subordinates. They avoid exploiting the trust and dependency of such persons. Psychologists make every effort to avoid dual relationships that could impair their professional judgment or increase the risk of exploitation. Examples of such dual relationships include, but are not limited to, research with and treatment of employees, students, supervisees, close friends, or relatives. Sexual intimacies with clients are unethical.

*Ethical Principles of Psychologists,* 36 (no. 6) Am. Psychologist, 633, 636 (June 1981) [hereinafter *Ethical Code* 1981].

Petitioner asserts that he did not violate the above provision because it did not explicitly prohibit romantic involvement with *former* clients. Petitioner supports this argument by noting that the American Psychological Association subsequently amended the ethical guidelines in 1992, stating, "[P]sychologists do not engage in sex-

**ELLIOTT v. N.C. PSYCHOLOGY BD.**

[126 N.C. App. 453 (1997)]

ual intimacies with a former therapy patient or client for at least two years after cessation or termination of professional services." *Ethical Principles of Psychologists and Code of Conduct*, 47 (no. 12) Am. Psychologist 1597, § 4.07(a) at 1605 (December 1992) [hereinafter *Ethical Code* 1992]. Petitioner suggests that under the current code, once the two-year waiting period has expired, a psychologist may ethically "date a former client."

We decline to adopt petitioner's interpretation of the ethical principles of psychologists with regard to sexual relationships with former clients. We believe such an approach would condone unethical behavior and undermine the public's confidence in the mental health professions.

Petitioner misconstrues the objectives of both the current code of ethical principles and the code in effect at the time of his misconduct. The purpose of the Ethical Principles of Psychologists is to "protect the public from . . . unprofessional conduct by persons licensed to practice psychology." N.C. Gen. Stat. § 90-270.1 (1993) (incorporating by reference the Ethical Principles of Psychologists in G.S. § 90-270.15(a)(10)). The primary goal of the ethical code for psychologists is the "welfare and protection of the individuals and groups with whom psychologists work." *Ethical Code* 1992 at 1599 (Preamble). The code is intended as a floor for ethical conduct, a minimum set of standards with which psychologists must comply. It is not intended, as petitioner appears to argue, to provide a ceiling for ethical conduct, above which any behavior short of illegal activity is acceptable.

Contrary to petitioner's permissive approach to dating former clients, the 1992 *Ethical Code* strongly discourages involvement between therapist and patient, even after the expiration of a two year waiting period. The code specifically states that "sexual intimacies with a former therapy patient or client are . . . frequently harmful to the patient or client, and because such intimacies undermine public confidence in the psychology profession and thereby deter the public's use of needed services, psychologists do not engage in sexual intimacies with former therapy patients and clients even after a two-year interval except in the most unusual circumstances." *Id.*, § 4.07(b) at 1605. The psychologist who chooses to engage in such activity "bears the burden of demonstrating that there has been no exploitation, in light of *all* relevant factors. . . ." *Id.* (emphasis added). The revised code makes crystal clear that psychologists who engage

ELLIOTT v. N.C. PSYCHOLOGY BD.

[126 N.C. App. 453 (1997)]

in romantic relationships with former clients may no longer argue to professional review boards and courts that the term "client" is to be narrowly construed to apply only to current clients and not former clients.

The psychology profession's prohibition against dual relationships is especially necessary in light of the well documented phenomenon of "transference." "Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist. . . ." *Simmons v. United States*, 805 F.2d 1363, 1364 (9th Cir. 1986). The psychologist is expected to recognize and understand a patient's inappropriate and loving emotions directed toward the therapist as constituting transference. *Id.* at 1365. "The proper therapeutic response is countertransference, a reaction which avoids emotional involvement and assists the patient in overcoming problems." *Id.*

During the therapeutic process, the psychologist and patient develop a relationship analogous to that of a parent and child. *Id.* The harmful consequences of a sexual relationship between a client and therapist are similar to those experienced by incest victims. *Id.* The experts agree that sexual intimacies between a therapist and client constitute a misuse of transference. *Id.* (quoting Stone, *The Legal Implications of Sexual Activity Between Psychiatrist and Patient*, 133 Am. J. Psychiatry 1138, 1139 (1976)). For these reasons, "[c]ourts have uniformly regarded mishandling of transference as malpractice or gross negligence." *Simmons*, 805 F.2d at 1365.

"[T]he factors which make sexual contact with a patient harmful and unethical do not appear to change when a professional relationship is terminated." Molly E. Slaughter, *Misuse of the Psychotherapist-Patient Privilege in Weisbeck v. Hess: A Step Backward in the Prohibition of Sexual Exploitation of a Patient by a Psychotherapist*, 41 S.D. Law Rev. 574, 615 (1996). Many patients continue to experience transference long after the formal termination of psychotherapy. Linda Jorgenson, Rebecca Randles, and Larry Strasburger, *The Furor Over Psychotherapist-Patient Sexual Contact: New Solutions to an Old Problem*, 32 Wm. & Mary L. Rev. 645, 663 (1991). Patients often conduct internal dialogues with former therapists which involve imaginary conversations about feelings, decisions and self-evaluation. *Id.* For these reasons, many psychologists adopt the position " '[o]nce a client, always a client.' " Slaughter, *supra*, at 615 (quoting Leonard J. Haas & John L. Malouf, Keeping Up

ELLIOTT v. N.C. PSYCHOLOGY BD.

[126 N.C. App. 453 (1997)]

the Good Work: A Practitioner's Guide to Mental Health Ethics 53-65 (1992)).

At the time petitioner became involved with four of his former patients, the ethical code that existed gave "notice that sexual intimacy between a psychologist and a patient was improper." *Weisbeck v. Hess*, 524 N.W.2d 363, 370 (S.D. Sup. Ct. 1994) (Miller, C.J., concurring). He was instructed by the code to avoid dual relationships that could impair his professional judgment or increase the risk of exploitation. *Id.*

Although the 1981 *Ethical Code* provides examples of dual relationships that a psychologist should avoid, it is explicit that the list is not exhaustive. *Ethical Code* 1981, Principle 6(a) at 636 (examples of dual relationships that should be avoided "are not limited"). The code unequivocally states "sexual intimacies with clients are unethical." *Id.* It never suggests that dual relationships of a sexual or social nature are permissible after therapy is terminated.

In the case *sub judice*, the Psychology Board determined that petitioner was in violation of the ethical principle regarding dual relationships. We hold that under the circumstances of this case, the Board's interpretation of that principle was neither plainly erroneous nor inconsistent with the purposes of the regulation.

[2] Petitioner next argues that the Board's conclusion that he violated Principle 2(f) of the APA's Ethical Principles is not supported by the findings or the evidence. We disagree.

Principle 2(f) states:

Psychologists recognize that personal problems and conflicts may interfere with professional effectiveness. Accordingly, they refrain from undertaking any activity in which their personal problems are likely to lead to inadequate performance or harm to a client, colleague, student, or research participant. If engaged in such activity when they become aware of their personal problems, they seek competent professional assistance to determine whether they should suspend, terminate, or limit the scope of their professional and/or scientific activities.

*Ethical Code* 1981, Principle 2(f) at 634. After a careful examination of the whole record, we find substantial evidence to support the Board's conclusion that petitioner violated Principle 2(f). Petitioner repeatedly testified that he made "mistakes in judgment," rationalized

ELLIOTT v. N.C. PSYCHOLOGY BD.

[126 N.C. App. 453 (1997)]

his behavior with former clients, was confused about dual relationships, and misinterpreted "vague language" in the code of ethics in a way that was convenient for him. He described the period during which he became involved with former clients, as "the rockiest and shakiest time of [his] life." He explained that he did not manage that period of his life well because he was "freshly separated and freshly divorced and in somewhat of a confused state. . . ." Despite petitioner's personal problems, which contributed to the poor judgment he exercised in relationships with his former clients, there is no evidence in the record that he sought professional assistance as required by the ethical guidelines. *See Ethical Code* 1981, Principle 2(f) at 634 (When psychologists become aware that their personal problems may interfere with their professional effectiveness, "they seek competent professional assistance."). We find no error in the Board's conclusion.

Petitioner next takes issue with the Board's finding that petitioner "is not yet fully aware of the consequences of dual relationships and expressed confused thinking regarding when or if dual relationships were justified or ethical." There is sufficient evidence in the record to support this finding.

[3] Finally, petitioner contends that the disciplinary action imposed by the Board was arbitrary and capricious in violation of G.S. § 150B-51(b)(6).

> The arbitrary and capricious standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are patently in bad faith or whimsical in the sense that they indicate a lack of fair and careful consideration or fail to indicate any course of reasoning and the exercise of judgment . . . .

*Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989) (citations omitted). There is no indication in this case that the Board acted in bad faith, unfairly, or without judgment.

Common sense and good judgment should also be guideposts for members of a learned profession trained to promote mental health. We are mindful that people who seek the counsel and guidance of psychologists are not sent home with "codes of ethical conduct." Rather, they are expected to draw from their own morals, values, and religious teachings to determine right from wrong.

How unfortunate when professional codes of conduct are used literally to define acceptable behavior. Even without a set of exact rules and regulations, surely the most educated amongst us are expected to understand values such as, honesty, integrity and honor. Professional codes of conduct set minimal standards, and are no substitute for moral and ethical judgment.

Affirmed.

Judges WYNN and SMITH concur.