STEPHEN S. ELLIOTT, PH. D., PETITIONER v. NORTH CAROLINA PSYCHOLOGY BOARD, RESPONDENT

No. 340PA97

(Filed 8 May 1998)

**1. Physicians, Surgeons, and Other Health Care Professionals § 54 (NCI4th)— Ethics Code for psychologists—incorporated into statute—derogation of common law—strictly construed**

The Court of Appeals erred in an action arising from the suspension of a psychologist's license for having social and sexual relationships with former patients by focusing on the policy

**ELLIOTT v. N.C. PSYCHOLOGY BD.**

[348 N.C. 230 (1998)]

objectives underpinning the Ethics Code for psychologists, incorporated into N.C.G.S. § 90-270.15(a)(10), rather than on the conduct specifically prohibited. The statute is in derogation of the common law and is penal in nature and so must be strictly construed.

2. **Physicians, Surgeons, and Other Health Care Professionals § 54 (NCI4th)— psychologist—relationships with former patients—not a violation of Ethics Code then in effect**

The conclusion of the North Carolina Psychology Board that petitioner violated Principle 6(a) of the Ethics Code for psychologists by having social and sexual relationships with former clients was not supported by the evidence. Principle 6(a), which must be strictly construed, prohibits only sexual intimacies with clients and there is no finding or evidence that any of petitioner's social interactions with former clients ever occurred during the professional relationship. The subsequent amendment to the Ethics Code creating a two-year waiting period was not in effect at the time of these incidents.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 126 N.C. App. 453, 485 S.E.2d 882 (1997), affirming an order entered by Allen (J.B., Jr.), J., on 4 January 1996 in Superior Court, Wake County, which affirmed a decision of the North Carolina Psychology Board. Heard in the Supreme Court 11 February 1998.

*Harry H. Harkins, Jr., for petitioner-appellant.*

*Michael F. Easley, Attorney General, by Anne J. Brown and Robert M. Curran, Assistant Attorneys General, for respondent-appellee.*

ORR, Justice.

This case arises out of several incidents involving petitioner, Stephen S. Elliott, and several of his former patients. Petitioner is a psychologist licensed by the North Carolina Psychology Board and by the Virginia Board of Professional Counselors. Petitioner resided and was employed in Martinsville, Virginia, until September 1987. While residing in Martinsville, petitioner spent one afternoon a week seeing patients in Eden, North Carolina. In September 1987, petitioner relocated to Winston-Salem, North Carolina. The incidents involved in this appeal all occurred prior to petitioner's relocation.

ELLIOTT v. N.C. PSYCHOLOGY BD.

[348 N.C. 230 (1998)]

The first incident involved a female adult patient who initially sought treatment from petitioner on 22 August 1984. This patient sought counseling for marital problems, anxiety attacks, and problems with coping skills. She remained in counseling until 12 February 1985 and took part in a total of twenty-four counseling sessions with petitioner. Subsequent to the completion of therapy, the patient contacted petitioner and "asked if [they] could be friends." Petitioner informed the patient that if they were to talk outside of therapy, he could no longer serve as her counselor. By the summer of 1985, the patient and petitioner had become close friends. Around this same time, both the patient and petitioner became separated from their respective spouses. In December 1985, the patient and petitioner began dating and continued to see each other through the winter of 1986. Petitioner and the patient engaged in sexual relations during this time.

The second incident involved a female adult patient who was in counseling with petitioner from May 1985 to July 1985. During that time, petitioner conducted eight counseling sessions with her. In June 1985, while still in counseling with petitioner, this patient separated from her husband. Petitioner did not hear from her again until December 1985. At that time, they encountered each other at a day-care center where the patient's daughter and petitioner's son were enrolled. After that encounter, the patient called petitioner and asked whether he would go out with her. Petitioner explained to her that he could never have a relationship with her as a counselor if he saw her socially. They dated from January 1986 through January 1988.

During 1986 and 1987, petitioner also had several dates with two other former adult female clients. In 1987, petitioner relocated to Winston-Salem, North Carolina. Subsequently, a complaint was filed with the Virginia Board of Professional Counselors by the first female client referenced above. On 24 April 1992, the Virginia Board entered a consent order with petitioner, which concluded that petitioner had violated various principles of the Regulations of the Board of Professional Counselors. Petitioner was reprimanded by the Virginia Board and ordered to submit an academic research paper on "the topic of the ethical standards of the profession regarding the prohibition of dual relationships of a sexual nature," with emphasis on the powerful position the counselor possesses over the patient.

Once the North Carolina Psychology Board became aware of the disciplinary action taken against petitioner by the Virginia Board, it

conducted its own hearing concerning the allegations. The North Carolina Board concluded that petitioner was in violation of Principles 2(f) and 6(a) of the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct (the Ethics Code), which is adopted by reference in the North Carolina Psychology Practice Act. N.C.G.S. § 90-270.15(a)(10) (1997). Based upon its conclusions, the Board suspended petitioner's license for sixty months, with an active period of suspension of thirty days. During the remaining period of suspension, the Board ordered petitioner to practice under the supervision of a licensed psychologist. Petitioner was also ordered to undergo therapy and evaluation with a psychologist.

Petitioner then filed a petition for judicial review. On 4 January 1996, the trial court affirmed the decision of the North Carolina Psychology Board. In its order, the trial court concluded that (1) the Psychology Board did not exceed its statutory authority, (2) the Psychology Board did not engage in any unlawful procedure or commit any error of law, (3) substantial evidence supports the Board's findings and conclusions, and (4) the final agency decision was not arbitrary or capricious.

On 26 January 1996, petitioner filed a written notice of appeal with the Court of Appeals. In an opinion filed on 17 June 1997, the Court of Appeals unanimously affirmed the decision of the trial court and, thus, that of the Psychology Board. On 2 October 1997, this Court allowed petitioner's petition for discretionary review.

[1] The only issue presented to us by petitioner's petition for discretionary review is whether the Court of Appeals was correct in affirming the trial court's order concluding that petitioner was in violation of Principle 6(a) of the Ethics Code. In the opinion below, the Court of Appeals focused on the policy objectives underpinning the Ethics Code. It noted that "[t]he purpose of [the Ethics Code] is to 'protect the public from . . . unprofessional conduct by persons licensed to practice psychology.' " *Elliott v. N.C. Psychology Bd.*, 126 N.C. App. 453, 457, 485 S.E.2d 882, 884 (1997) (quoting N.C.G.S. § 90-270.1 (1993) (incorporating by reference the Ethics Code)) (alteration in original). The Court of Appeals further stated that the Ethics Code "never suggests that dual relationships of a sexual or social nature are permissible after therapy is terminated." *Id.* at 459, 485 S.E.2d at 885. It concluded by holding that the Psychology Board was correct in determining that petitioner was in violation of Principle 6(a). *Id.* However, we disagree with the Court of Appeals and accordingly hold

that the Court of Appeals erred in affirming the portion of the order concluding that petitioner was in violation of Principle 6(a).

Article 18A of the North Carolina General Statutes governs the practice of psychology. N.C.G.S. § 90-270.15(e), contained within article 18A, provides that "the procedure for revocation, suspension, denial, limitations of the license or health services provider certification . . . shall be in accordance with the provisions of Chapter 150B of the General Statutes." N.C.G.S. § 90-270.15(e). In discussing judicial review of a final agency decision, chapter 150B provides that

the court reviewing a final agency decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1995).

The issue presented to us by this appeal requires us to determine (1) whether the Court of Appeals correctly construed Principle 6(a), and (2) whether the Psychology Board's findings and conclusions regarding Principle 6(a) are supported by substantial evidence. First, we will address whether the Court of Appeals properly construed Principle 6(a). " 'When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ *de novo* review.' " *Brooks v. McWhirter Grading Co.*, 303 N.C. 573, 580-81, 281 S.E.2d 24, 29 (1981) (quoting *In re Appeal of N.C. Sav. & Loan League*, 302 N.C. 458, 465, 276 S.E.2d 404, 410 (1981)). Thus, in determining the appropriate construction to be given Principle 6(a), we will apply *de novo* review.

**ELLIOTT v. N.C. PSYCHOLOGY BD.**

[348 N.C. 230 (1998)]

Principle 6(a) of the Ethics Code provides as follows:

Psychologists are continually cognizant of their own needs and of their potentially influential position vis-à-vis persons such as clients, students, and subordinates. They avoid exploiting the trust and dependency of such persons. Psychologists make every effort to avoid dual relationships that could impair their professional judgment or increase the risk of exploitation. Examples of such dual relationships include, but are not limited to, research with and treatment of employees, students, supervisees, close friends, or relatives. *Sexual intimacies with clients are unethical.*

*Ethical Principles of Psychologists*, 36 Am. Psychologist 633, at 636 (June 1981) (emphasis added). Petitioner argues that both the Psychology Practice Act and the Ethics Code, incorporated therein by reference, must be strictly construed. He notes that Principle 6(a) specifically states that it is unethical to have sexual relations *"with clients."* Petitioner contends that because he engaged in social or sexual relationships only with former clients, after the counseling relationship had terminated, there is no violation of Principle 6(a).

It is well settled that statutes which are in derogation of the common law and which are penal in nature are to be strictly construed. *Vogel v. Reed Supply Co.*, 277 N.C. 119, 131, 177 S.E.2d 273, 280 (1970). North Carolina common law did not provide for the regulation of the practice of psychology. Further, under the Psychology Practice Act, the Board has the authority to "deny, suspend, or revoke licensure and certification, and may discipline, place on probation, limit practice and require examination, remediation and rehabilitation." N.C.G.S. § 90-270.15(a). Thus, the Psychology Practice Act should be strictly construed because it is both in derogation of the common law and penal in nature.

In the case of *In re Dillingham*, 257 N.C. 684, 127 S.E.2d 584 (1962), this Court discussed N.C.G.S. § 93A-6(a), which authorizes the North Carolina Real Estate Licensing Board to hold a hearing and to revoke or suspend the license of a real estate broker or a real estate salesman. The Court stated:

The portion of our Act which empowers The Board to revoke the license of a real estate broker or salesman is penal in its nature and should not be construed to include anything as a ground for revocation which is not embraced within its terms.

*Id.* at 695, 127 S.E.2d at 592. Similarly, as the statute in the present case gives the Psychology Board the right to deny, suspend, or revoke the license of a psychologist and impose other disciplinary and remedial actions for violations of the Ethics Code, it "should not be construed to include anything as a ground for revocation which is not embraced within its terms." *Id.*

Further, in *McArver v. Gerukos*, 265 N.C. 413, 144 S.E.2d 277 (1965), this Court construed a criminal statute requiring the licensing of real estate brokers and salesmen. The Court noted the criminal nature of the statute and stated:

> For this reason, and for the further reason that it is a statute restricting to a special class of persons the right to engage in a lawful occupation, the act must be strictly construed so as not to extend it to activities and transactions not intended by the Legislature to be included.

*Id.* at 417, 144 S.E.2d at 280. In the present case, by requiring that psychologists be licensed, the statutes contained within article 18A are statutes "restricting to a special class of persons the right to engage in a lawful occupation." *Id.* This additional factor provides further support for the strict construction of N.C.G.S. § 90-270.15, and, accordingly, Principle 6(a).

In the opinion below, the Court of Appeals addressed petitioner's contention "that he did not violate [Principle 6(a)] because it did not explicitly prohibit romantic involvement with *former* clients." *Elliott*, 126 N.C. App. at 456, 485 S.E.2d at 884. However, it declined to adopt petitioner's "interpretation of the ethical principles of psychologists with regard to sexual relationships with former clients." *Id.* at 457, 485 S.E.2d at 884. Instead, as noted above, the Court of Appeals focused on the policy objectives and general purpose of the Ethics Code.

The Court of Appeals agreed that the Ethics Code prohibits sexual relations "with clients." *Id.* at 459, 485 S.E.2d at 885. However, it noted that the Code "never suggests that dual relationships of a sexual or social nature are permissible after therapy is terminated." *Id.* By focusing on the underlying objectives and general principles of the Ethics Code, rather than the conduct specifically prohibited, the Court of Appeals erred. Accordingly, we reverse the Court of Appeals and hold that the Ethics Code must be strictly construed.

ELLIOTT v. N.C. PSYCHOLOGY BD.

[348 N.C. 230 (1998)]

**[2]** Having determined that Principle 6(a) is to be strictly construed, we must determine whether there is substantial evidence to support the Board's conclusion that petitioner violated Principle 6(a). This determination requires application of the "whole record test." This test

> "does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*. On the other hand, the 'whole record' rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn."

*Associated Mechanical Contractors, Inc. v. Payne*, 342 N.C. 825, 832, 467 S.E.2d 398, 401 (1996) (quoting *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citation omitted)).

While applying the "whole record" test, we must also strictly apply the terms of Principle 6(a). In applying the standard of strict construction, this Court has stated:

> [T]he rule requiring strict construction does not mean that such statutes are to be stintingly construed to provide less than what their terms would ordinarily be interpreted as providing. Strict construction of statutes requires only that their application be limited to their express terms, as those terms are naturally and ordinarily defined.

*Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988).

The Board's findings of fact, which are pertinent to this determination, are as follows:

> 6. During the period of time from 8/84 through 2/85, [petitioner] had a counseling relationship with a female client with whom he subsequently entered into a dual and sexual relationship.

7. Between 1/86 and 1/88, [petitioner] entered into a social/sexual relationship with a second female client who was his client between 5/85 and 7/85.

8. [Petitioner] dated a third and fourth female, each of whom was a former client.

Thus, the Board's findings demonstrate that petitioner had social/ sexual relationships only with former clients and only after the counseling relationships had ended. Principle 6(a) prohibits only "[s]exual intimacies with clients." Here, there is no finding or evidence that any of petitioner's social interactions with former clients ever occurred during the professional relationship. Accordingly, the conclusion that petitioner violated Principle 6(a) is unsupported by the evidence.

We note that a new version of the Ethics Code became effective 1 December 1992 and applies to conduct occurring on or after that date. The new Ethics Code contains Standard 4.05, which provides that "[p]sychologists do not engage in sexual intimacies with current patients or clients." *Ethical Principles of Psychologists*, 47 Am. Psychologist 1597, at 1605 (Dec. 1992). New Standard 4.07(a) goes on to clarify that "[p]sychologists do not engage in sexual intimacies with a former therapy patient or client for at least two years after cessation or termination of professional services." *Id.* Thus, in the future, there will be no question of the limitation placed on psychologists entering into relationships with former clients. There is a clear two-year "waiting period" now in effect.

However, as this subsequent amendment to the Ethics Code was not in effect at the time of the incidents involving petitioner, a strict construction of Principle 6(a) requires us to conclude that the Court of Appeals erred in affirming the trial court's order concluding that petitioner was in violation of Principle 6(a). Accordingly, the decision of the Court of Appeals is reversed as to this issue, and this case is remanded to that court for further remand to the superior court for further remand to the North Carolina Psychology Board for further proceedings not inconsistent with this opinion. Because the issue involving Principle 2(f) is not before us on appeal, the Court of Appeals' holding on that issue stands.

REVERSED IN PART AND REMANDED.