CAPITAL OUTDOOR, INC., HORIZON OUTDOOR ADVERTISING, INC.; MORRIS COM-
MUNICATIONS CORP., D/B/A FAIRWAY OUTDOOR ADVERTISING; LAMAR
ADVERTISING OF MOBILE, INC.; SIGNATURE OUTDOOR ADVERTISING, INC.;
AND UNISTAR OUTDOOR ADVERTISING, INC., PETITIONERS v. E. NORRIS
TOLSON, AS SECRETARY OF THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF
NORTH CAROLINA, RESPONDENT

ADAMS OUTDOOR ADVERTISING OF CHARLOTTE, A MINNESOTA LIMITED PARTNERSHIP,
PETITIONER v. DAVID McCOY, SECRETARY OF THE DEPARTMENT OF TRANSPORTATION OF
THE STATE OF NORTH CAROLINA, RESPONDENT

CAPITAL OUTDOOR, INC., PETITIONER v. DAVID McCOY, SECRETARY OF THE DEPARTMENT
OF TRANSPORTATION OF THE STATE OF NORTH CAROLINA, RESPONDENT

DASCO ENTERPRISES, INC., PETITIONER v. DAVID McCOY, SECRETARY OF THE
DEPARTMENT OF TRANSPORTATION OF THE STATE OF NORTH CAROLINA, RESPONDENT

MORRIS COMMUNICATIONS CORP., D/B/A FAIRWAY OUTDOOR ADVERTISING OF
THE TRIAD, PETITIONER v. DAVID McCOY, SECRETARY OF THE DEPARTMENT OF
TRANSPORTATION OF THE STATE OF NORTH CAROLINA, RESPONDENT

No. COA02-94

(Filed 15 July 2003)

1. Highways and Streets— outdoor advertising—interpreta-
tion of DOT regulation

The words "height" and "sign structure" in a Department of
Transportation regulation providing that the height of any portion
of a sign structure as measured vertically from the adjacent edge

of pavement of the main traveled way shall not exceed 50 feet were properly construed by the trial court by their ordinary meanings to refer to the top of the sign face.

**2. Highways and Streets— outdoor advertising—billboard height regulation—arguments not raised below—authority of DOT**

Arguments concerning a DOT regulation limiting the height of billboards not raised below were precluded in the Court of Appeals. In any event, petitioners did not forecast evidence to support their contention that the regulation exceeded the authority of the DOT because of purported difficulties in measuring the signs without violating various statutes and other regulations.

**3. Highways and Streets— outdoor advertising—DOT billboard height regulation—substantive due process—no violation**

A DOT regulation limiting the height of billboards did not violate petitioners' substantive due process rights. The regulation addresses safety as well as aesthetics concerns, and the means are rational and not overly burdensome. Although petitioners pointed to the difficulty of measuring the signs without violating statutes and other regulations, they submitted no evidence to support this contention.

**4. Laches— DOT billboard height regulation—signs built after effective date—regulation not initially enforced**

The doctrine of laches did not apply to DOT's enforcement of a billboard height regulation where petitioners built their signs after the effective date of the regulation, DOT did not give them assurances that their signs were in compliance, petitioners's conclusory statements of expenses were not sufficiently detailed, and petitioners' generalized statements about their ongoing sign business do not establish an issue of fact as to whether they were disadvantaged by DOT's initial non-enforcement of the regulation.

Appeal by petitioners from judgment entered 10 September 2001 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 28 January 2003.

*Waller, Stroud, Stewart & Araneda, LLP, by Betty Strother Waller, for petitioners-appellants.*

*Attorney General Roy Cooper, by Assistant Attorney General Gaines M. Weaver, for respondents-appellees.*

CAPITAL OUTDOOR, INC. v. TOLSON

[159 N.C. App. 55 (2003)]

GEER, Judge.

Petitioners appeal from an order granting respondents' motion for summary judgment. This appeal involves primarily a facial constitutional challenge to N.C. Admin. Code tit. 19A, r. 2E.0203(1)(f) (December 1990). This regulation originally provided: "The height of any portion of the sign structure as measured vertically from the adjacent edge of pavement of the main traveled way shall not exceed 50-feet."[1] We affirm the trial court's granting of respondents' motion for summary judgment, holding that petitioners failed to establish the existence of genuine issues of material fact and that this regulation is constitutional on its face.

Petitioners are outdoor advertising companies. The regulation at issue was promulgated by the North Carolina Department of Transportation ("NCDOT") pursuant to the Outdoor Advertising Control Act ("OACA"), codified at N.C. Gen. Stat. § 136-126 (2001). The OACA was passed in 1967 to control the placement, maintenance, and removal of billboards adjacent to highways. The OACA delegates to NCDOT authority to further promulgate rules and regulations governing erection and maintenance of billboards, permitting procedures, appeal procedures related to administrative decisions denying or revoking a permit, and administrative procedures for appealing a decision that a billboard is illegal. N.C. Gen. Stat. § 136-130 (2001). NCDOT first adopted such regulations effective 1 July 1978 and over the years has revised the regulations on a number of occasions. *See* N.C. Admin. Code tit. 19A, r. 2E.0200 (June 2002), *et seq.*

The height limitation contained in N.C. Admin. Code tit. 19A, r. 2E.0203(1)(f) (June 2002) was adopted and became effective in December 1990, but NCDOT did not take action to enforce the provision until 1998. Between January 1998 and June 2000, NCDOT took inventories of the height of NCDOT controlled billboards and revoked the billboard permits for all those that were determined to exceed the 50-foot height limitation. Petitioners all had permits revoked for signs more than 50 feet tall.

Petitioners appealed the revocation of their permits to the Secretary of NCDOT, who affirmed that decision. Pursuant to N.C. Gen. Stat. § 136-134.1 (2001), petitioners sought review in Wake County Superior Court. N.C. Gen. Stat. § 136-134.1 provides for

---

1. The regulation has been amended since the petitions were filed in this case to clarify that the phrase "sign structure" excludes "cut outs or embellishments." N.C. Admin. Code tit. 19A, r. 2E.0203(1)(f) (June 2002).

*de novo* review by the court sitting without a jury. The court may only consider whether the Secretary's decision (1) is in violation of constitutional provisions, (2) is not made in accordance with OACA or NCDOT rules or regulations, or (3) is affected by other error of law. *Id.*[2]

While the review proceedings were pending, the petitioners-appellants' cases were consolidated. Both sides filed cross-motions for summary judgment, which were heard on 24 May 2001. In an order entered 10 July 2001, the court granted respondents' motion for summary judgment. An amended order on judicial review was entered 10 September 2001 to correct technical errors in the original order. Petitioners have appealed the granting of summary judgment.

On review of a grant of summary judgment, this Court must review the whole record to determine (1) whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) whether the moving party is entitled to judgment as a matter of law. *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). As stated by this Court:

> A genuine issue of material fact is of such a nature as to affect the outcome of the action. The moving party bears the burden of establishing the lack of a triable issue of fact. The motion must be denied where the non-moving party shows an actual dispute as to one or more material issues.

*Johnson v. Trustees of Durham Tech. Cmty. College*, 139 N.C. App. 676, 681, 535 S.E.2d 357, 361, *app. dismissed and disc. review denied*, 353 N.C. 265, 546 S.E.2d 101 (2000) (citations omitted). The non-movant may not "rest upon the allegations of its pleading to create an issue of fact, even though the evidence must be interpreted in a light favorable to the nonmovant." *Smiley's Plumbing Co., Inc. v. PFP One, Inc.*, 155 N.C. App. 754, 761, 575 S.E.2d 66, 70, *disc. review denied*, 357 N.C. 166, 580 S.E.2d 698 (2003).

In considering a motion for summary judgment, it is the trial court's and this Court's duty to determine "whether genuine issues of

---

2. In *National Advertising Co. v. Bradshaw*, 48 N.C. App. 10, 13-14, 268 S.E.2d 816, 818 (1980), this Court held that the Administrative Procedure Act does not apply to appeals from the Secretary of NCDOT.

material fact exist and does not extend to resolving such issues. . . . [T]he court's function at this juncture is to find factual issues, not to decide them." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citations omitted). "As a general principle, summary judgment is a drastic remedy which must be used cautiously so that no party is deprived of trial on a disputed factual issue." *Johnson*, 139 N.C. App. at 681, 535 S.E.2d at 361.

## The Absence of Genuine Issues of Material Fact

[1] Petitioners contend generally that the trial court resolved disputed issues, but argue specifically only that there is a dispute as to what the words "height" and "sign structure" mean within the NCDOT regulation, N.C. Admin. Code tit. 19A, r. 2E.0203(1)(f). The construction of a regulation is a question of law and not of fact. *Ace-Hi, Inc. v. Dep't of Transp.*, 70 N.C. App. 214, 216, 319 S.E.2d 294, 296 (1984) (interpretation of regulation involves only "legal questions"). Petitioners have offered no evidence that their signs were in fact less than 50 feet tall. Instead, this case involves "legal questions of proper exercise of authority and of interpretation of statutes and regulations." *Id.* Consequently, this case was appropriate for summary disposition.

Petitioners' complaint regarding the trial court's finding that " 'height' and 'sign structure,' are self-explanatory terms used in their everyday sense" is not well-founded. Although mislabeling its assertion as a finding of fact, the trial court was correctly applying a principle of statutory construction. That principle, which governs equally in the construction of regulations, provides that "unless the words used [in the regulation] have acquired some technical meaning or the context otherwise dictates, they must be construed in accordance with their common or ordinary meaning." *Id.* at 218, 319 S.E.2d at 297.

The record contains no indication that the words "height" or "sign structure" have some technical meaning. The word "height" in common usage means "the highest part of something material," the "top part," or "the extent of elevation above a level." Webster's Third New International Dictionary 1050 (1968). In other words, the regulation refers to the top of the "sign structure." Respondents' witness Lacy Love, NCDOT's State Road Maintenance Engineer, confirmed that NCDOT interprets the regulation to mean the top of the sign face. Contrary to petitioners' contention otherwise, we find nothing in the

**CAPITAL OUTDOOR, INC. v. TOLSON**

[159 N.C. App. 55 (2003)]

record to suggest that this interpretation—that the measurement refers to the top of the sign face—is unreasonable or incorrect.[3]

Authority of NCDOT to Adopt the Height Regulation

**[2]** Unquestionably, NCDOT had authority to promulgate a rule governing the height of billboards. *See* N.C. Gen. Stat. § 136-130 (authorizing NCDOT to promulgate rules and regulations governing the erection and maintenance of outdoor advertising). Petitioners, however, contend that the height regulation exceeded NCDOT's authority and conflicts with State policy as set forth in various statutes. Petitioners do not argue that the 50-foot limitation is in and of itself a problem, but rather claim that in order to measure the height of the signs for purposes of complying with the regulation, they will have to engage in unsafe behavior and will have to violate other statutes including N.C. Gen. Stat. § 136-89.56 (2001) (prohibiting the authorization of "commercial enterprises or activities" on certain highways) and N.C. Gen. Stat. § 136-89.58 (2001) (prohibiting any person from stopping, parking, or leaving standing any vehicle on any portion of the right-of-way of specified highways). Petitioners also contend that their permits could be revoked for engaging in the conduct necessary to comply with the height requirement. *See* N.C. Admin. Code tit. 19A, r. 2E.0210(9).

It appears from the record that petitioners failed to raise these arguments below. They are, therefore, precluded from advancing them in this Court. N.C.R. App. P. 10(b)(1). In any event, petitioners have not forecast evidence to support their contentions.

This argument revolves around the technique required to obtain height measurements. The only evidence in the record regarding measuring techniques appears in the deposition of Mr. Love, who testified to various techniques and safety strategies that could be used. Additionally, Mr. Love testified that none of the petitioners has requested any assistance from NCDOT in complying with the height regulation and yet, of the 101 new signs built since 1999 by petitioners, only one has failed to meet the height limitation (and that sign was only off by eight inches). In addition, with respect to the older, non-compliant signs, respondents offered evidence that various sign companies, including two of the original petitioners, were success-

---

3. Although it is not material to the resolution of this case, we do note that the trial court erred in relying upon this Court's analysis in *Elliott v. N.C. Psychology Bd.*, 126 N.C. App. 453, 485 S.E.2d 882 (1997). That decision was reversed by the Supreme Court. 348 N.C. 230, 498 S.E.2d 616 (1998).

fully able to lower those signs to comply with the regulation. Petitioners submitted no evidence countering Mr. Love's testimony regarding alternative techniques and offered no evidence indicating that they had experienced any problems in constructing new signs or lowering old signs to conform to the height regulation. The record thus contains no factual basis to support petitioners' contention on appeal that they cannot comply with the regulation.

The Constitutionality of the Regulation

[3] Petitioners also argue that the regulation at issue violates their substantive due process rights and is unconstitutional on its face. Petitioners specifically do not contend that the regulation is unconstitutional as applied.

This Court recently dealt with a facial challenge to a regulation promulgated by the North Carolina State Board of Dental Examiners pursuant to the Dental Practice Act in *Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 571 S.E.2d 52 (2002). As explained in *Affordable Care*, the first step in analyzing whether a law violates substantive due process is to determine "whether the right infringed upon is a fundamental right." *Id.* at 535, 571 S.E.2d at 59. If the law infringes upon a fundamental right, "then the court must apply a strict scrutiny analysis wherein the party seeking to apply the law must demonstrate that it serves a compelling state interest." *Id.* at 535-36, 571 S.E.2d at 59. If there is no fundamental right involved, then "the party seeking to apply [the law] need only meet the traditional test of establishing that the law is rationally related to a legitimate state interest." *Id.* at 536, 571 S.E.2d at 59. Under the "rational relation" test, "the law in question is presumed to be constitutional." *Id.*

While the General Assembly has declared "that outdoor advertising is a legitimate commercial use of private property adjacent to roads and highways," N.C. Gen. Stat. § 136-127 (2001), petitioners appropriately do not contend that this case involves a fundamental right. *See Transylvania County v. Moody*, 151 N.C. App. 389, 397, 565 S.E.2d 720, 726 (2002) (the right to construct outdoor advertising signs is not a fundamental right). Therefore, the height regulation need only survive a "rational basis" review.

The governmental interest in regulating outdoor advertising is:

to promote the safety, health, welfare and convenience and enjoyment of travel on and protection of the public investment in high-

ways within the State, to prevent unreasonable distraction of operators of motor vehicles and to prevent interference with the effectiveness of traffic regulations and to promote safety on the highways, to attract tourists and promote the prosperity, economic well-being and general welfare of the State, and to preserve and enhance the natural scenic beauty of the highways and areas in the vicinity of the State highways and to promote the reasonable, orderly and effective display of such signs, displays and devices.

N.C. Gen. Stat. § 136-127. In short, governmental interests include both safety and aesthetic concerns.

Petitioners do not argue that the regulation lacks a rational relationship to these governmental interests, but instead contend that a billboard height limit is an aesthetic regulation only and that our Supreme Court has held that aesthetics-based regulatory ordinances are permissible only when they are reasonable. *State v. Jones*, 305 N.C. 520, 290 S.E.2d 675 (1982). We find *Jones* to be inapplicable because the regulation at issue also addresses safety concerns, such as those included in N.C. Gen. Stat. § 136-127 (preventing unreasonable distraction of motorists). *See Summey Outdoor Advertising, Inc. v. County of Henderson*, 96 N.C. App. 533, 540, 386 S.E.2d 439, 444 (1989) (declining to find *Jones* applicable to county ordinance regulating outdoor advertising signs in size, height, and distance from road), *disc. review denied*, 326 N.C. 486, 392 S.E.2d 101 (1990).

In *Affordable Care*, after finding that there was a legitimate governmental interest in the regulation promulgated by the Board of Dental Examiners, the Court addressed the plaintiffs' argument that "even if the [r]ule furthers a legitimate purpose, the means it provides to effectuate that purpose are not rational and the burden outweighs any public benefit." 153 N.C. App. at 538, 571 S.E.2d at 61. In response, the Court stated:

In a facial challenge, the presumption is that the law is constitutional, and a court may not strike it down if it may be upheld on any reasonable ground. "An individual challenging the facial constitutionality of a legislative [a]ct 'must establish that no set of circumstances exists under which the [a]ct would be valid.' " "The fact that a statute 'might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.' "

*Id.* at 539, 571 S.E.2d at 61 (citations omitted).

Petitioners in this case have similarly argued that the means adopted to effectuate the governmental purpose is not rational and is overly burdensome. Specifically, petitioners contend that even assuming that the height restriction furthers a legitimate State interest, the means chosen by NCDOT—requiring that the height not exceed 50 feet as measured vertically from the edge of the pavement—is unreasonable, cost prohibitive, unreliable, subjective, and inconsistent.

In support of this argument, petitioners again point to purported difficulties in measuring the signs without violating other statutes and regulations. As indicated above, however, petitioners submitted no evidence to the trial court in support of these difficulties. Mr. Love's testimony referred to different means by which petitioners could comply with the regulation; petitioners have not demonstrated an inability to comply if they obtained the assistance of NCDOT; and petitioners have, according to the record, experienced no problems with compliance since 1999. Petitioners have thus failed to meet their considerable burden of establishing "no set of circumstances . . . under which the [a]ct would be valid." *Id.*

With respect to petitioners' claim that compliance would be cost-prohibitive, petitioners offered no supporting evidence. Respondents submitted the only evidence of cost: $250.00 per sign plus expenses. Although petitioners suggested that the amount might be higher, they made no attempt to offer evidence to create an issue of fact as to whether the cost was prohibitive or not.[4]

The Doctrine of Laches

[4] Finally, petitioners argue that the doctrine of laches applies here. That doctrine has most recently been described as follows:

> To establish the affirmative defense of laches, our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of

---

4. Petitioners point to NCDOT's purchase of 14 laser range finders at a cost of $3,000 each. Yet, petitioners do not explain how this fact reflects the likely cost to them and whether the purchase of a laser range finder, which could continue to be used for each sign built, would be cost-prohibitive.

the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings L.L.C. v. City of Charlotte*, 148 N.C. App. 208, 209-10, 558 S.E.2d 197, 198 (2001).

As petitioners argue, North Carolina law has applied the laches doctrine to the untimely enforcement of sign regulations. *Abernethy v. Town of Boone Bd. of Adjustment*, 109 N.C. App. 459, 427 S.E.2d 875 (1993). This Court in *MMR Holdings*, however, limited *Abernethy* to its specific facts, noting that the doctrine of laches was appropriate in *Abernethy* because of assurances from city officials that the plaintiff's signs were in compliance and because the plaintiff had spent $250,000.00 in reliance upon those assurances. *MMR Holdings*, 148 N.C. App. at 210, 558 S.E.2d at 198. In *MMR Holdings*, the Court declined to apply the doctrine of laches in the absence of express assurances of compliance from city officials and in the absence of any evidence that the plaintiffs had spent money or otherwise changed their position in reliance upon such assurances. *Id.* at 210-11, 558 S.E.2d at 198-99.

This case closely resembles *MMR Holdings*. Petitioners do not claim that NCDOT gave them any assurances that their signs were in compliance with the regulation at issue. In fact, petitioners acknowledge that they knew of the regulation when they erected their signs, but elected only to have their structures "pre-fabricated to a length which, when erected[,] would not violate the *spirit and intent* of the regulation . . . ." (Emphasis supplied) Although petitioners complain that NCDOT did not notify them that their signs were nonconforming, since these signs were built after the effective date of the regulation, petitioners bore the responsibility of ensuring that their signs complied in the first instance. As this Court stated in *Bracey Advertising Co., Inc. v. North Carolina Dep't of Transp.*, 35 N.C. App. 226, 230, 241 S.E.2d 146, 148, *disc. review denied*, 295 N.C. 89, 244 S.E.2d 257 (1978), "[t]hose persons or parties, including petitioner[s], who erected outdoor advertising devices on or after [the effective date of an ordinance] without complying with the established standards did so at their peril."

In addition, *Abernethy* held that before laches may be used to prevent a governmental body from enforcing an ordinance, the party asserting laches must demonstrate that it suffered disadvantage

**CAPITAL OUTDOOR, INC. v. TOLSON**

[159 N.C. App. 55 (2003)]

"due to the delay." 109 N.C. App. at 465, 427 S.E.2d at 878. Here, petitioners, in virtually identical affidavits, point in general language to various expenditures that they have made on their signs for repairs and improvements, to the fact that they have entered into long-term contracts with customers wishing to rent space on the billboards, and to unspecified business decisions made in reliance on the billboards being legal. Petitioners do not, however, make any attempt to demonstrate how they would have avoided these expenses or how they would have behaved differently had NCDOT notified them of non-compliance earlier.

Even if petitioners had tied these assertions to the delay, Rule 56(e)'s requirement that the non-moving party set forth "specific facts" is not met by petitioners' extremely conclusory statements. While summary judgment is a "drastic remedy," *Johnson*, 139 N.C. App. at 681, 535 S.E.2d at 361, without some modicum of detail, neither the trial court nor this Court is in a position to assess whether petitioners will be able to establish that they were wrongly prejudiced by the delay in enforcement.

Petitioners' generalized statements regarding their ongoing sign business do not establish an issue of fact as to whether they were disadvantaged by NCDOT's non-enforcement of the height regulation. The trial court therefore did not err in granting summary judgment as to petitioners' claim of laches.

Conclusion

For the reasons stated herein, we hold that the trial court did not err in granting respondents' motion for summary judgment.

Affirmed.

Judges WYNN and BRYANT concur.